453 So.2d 835 (1984)
William D. HUGGINS, Appellant,
v.
STATE of Florida, Appellee.
No. 83-321.
District Court of Appeal of Florida, Fifth District.
June 7, 1984.
Rehearing Denied July 11, 1984.
Lawrence L. Lidfeldt, Maitland, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for appellee.
DAUKSCH, Judge.
This is an appeal from a conviction of sexual battery. Because our disposition of the first point is decisive of the entire matter we do not treat the other two points on appeal.
Appellant was convicted of a sexual battery upon a seven year old girl. The offense occurred in a state park during daylight hours after the child and her mother became separated during a picnic and swimming outing.
While the child was walking across a boardwalk she encountered a man whom she followed a short way into the woods. *836 After asking her name the man grabbed her, covered her mouth with his hand and took her further into the woods. He told her to lie down on her towel, performed sex acts on her, then allowed her to take her towel and leave. She found her mother and immediately reported the assault and the rangers and sheriff deputies were summoned.
Upon arrival at the park Deputy Kelley, the road patrol deputy assigned to the area, talked with the child and her mother and had the child lead him to the scene of the attack. At the scene a Marlboro cigarette pack was found and taken by the deputy. A latent fingerprint testing procedure conducted later on the pack proved negative. The child gave Deputy Kelley a description of the rapist and said he was a white male, approximately 145 pounds, 5'10", blond hair, blue eyes, possibly the beginning of a beard which the deputy interpreted as meaning he had not shaved for a couple of days, and a moustache. He was wearing a gray bathing suit, possibly had red stripes going down the side of the trunks or around the legs, either lateral or vertical. No shirt, no shoes. He had a round, dark spot, birthmark or mole underneath his lower lip with hair growing out of it but no other scars or tattoos. The victim did not speak of any speech impediments regarding the attacker.
The police converged on the area and approximately 20 of them and their bloodhound dogs tried to track down the assailant. No one could be found, so a systematic investigation over a period of months ensued. During this time a deputy met the appellant at the park and because he was an habitue of the park, and thus a suspect, a Field Interrogation Report Card was filled out. This card is filled out from information obtained from the interviewee and observations of the interviewer. This deputy testified at trial that the appellant was cooperative, seemed to be anxious to help out in any way he could and did not seem to be hiding anything from him. The description of the appellant was stocky, not thin, 175 pounds, not 145 pounds, dark brown almost black hair, not blond, brown eyes, not blue. No dark spot or mole under the lip. It was established at trial that appellant had burn scars on his arms and legs and prominent tattoos on his hands.
A detective later interviewed appellant and he was again cooperative and non-evasive. The detective had also interviewed the child and obtained a similar description of the perpetrator, including the brown spot under the lip, and medium blond hair.
The detective obtained a picture of appellant from the state division of driver licenses and sent it along with seven others to a detective in Cobb County, Georgia who took them to the child who now lived in Marietta, Georgia. She selected appellant from the array of photos. With that information and the fact that appellant smoked Marlboro cigarettes, the same as what was found at the scene, an indictment was obtained.
Although scientific tests were used to help build a case against appellant, the results were negative. The child testified that although she hadn't seen it there before there was some "pure white and sick" substance on the towel when she took it from the scene. No semen was examined from the towel, but hair was. It was blond hair. It did not match either the child or appellant. The state crime lab technician testified the hair did not "originate from (appellant)." No fingerprints were gotten from the cigarette pack. There was no evidence regarding footprints in the record and although appellant had been previously convicted of crimes they involved marijuana and larceny, not sex or violence related crimes. Appellant was married for six or seven years at the time of trial and had two children with whom he and his wife lived. In summary, based upon the identification of appellant from the photograph and the fact that he smoked Marlboro cigarettes and a Marlboro pack was found at the scene, the jury found him guilty; this notwithstanding the fact that no identification of appellant was made at trial, no inculpatory scientific evidence of any kind was obtained, no one placed the accused at or *837 near the scene at the time of the attack, no inculpatory statements, no past history. The jury found the appellant guilty also notwithstanding the fact that a much different description of the attacker was consistently given the police by the only eyewitness, who did not identify appellant at trial and said her attacker was not in the courtroom. One other problem, not mentioned earlier, the accused has a pronounced lisp, the record says, and the child did not remember her attacker having any speech problem.
The question for us to decide is whether there was evidence legally sufficient to sustain the judgment; or, did the trial judge err in failing to grant a judgment of acquittal. The evidence was legally insufficient and the trial judge erred.
The eyewitness testimony was the only evidence against the accused, it was not an in court identification, was not corroborated by any other substantial evidence and flew directly in the face of hard evidence to the contrary combined with a lack of investigative findings. Should a man be convicted of a crime which carries a mandatory 25 years minimum sentence without parole based only upon the selection of his photograph from amongst seven others? Perhaps, but should such a conviction stand where there is other evidence, such as the victim's earlier, repeated and consistent descriptions contrary to a true one of the accused? Coupled with contrary scientific evidence  the non-matching, exclusionary blond hairs? And coupled with a lack of any other inculpatory evidence, circumstantially or inferentially? We think not and conclude that the law is clear that identity of the accused is not only an essential element of proof in a criminal proceeding but above all others the most crucial. That, above all others, is the fatal blow to an accused and the law should require substantial, competent, beyond all reasonable doubt proof.
Evidentiary sufficiency as distinguished from evidentiary weight is the standard to be applied by appellate courts reviewing evidence. Tibbs v. State, 397 So.2d 1120 (Fla. 1981) is the most recent substantial treatment of the difference between weight and sufficiency. That opinion is not entirely dispositive and directive, perhaps because the subject does not permit it. When is a trial judge or an appellate court reweighing rather than testing legal sufficiency of evidence? In some cases it can be easily seen. In others, not so. It is simple, indeed simplistic, to say if there is any evidence, no matter how little, no matter how well contradicted or disproved or impeached then it is sufficient. The simple formula, then, would be to say if the jury finds guilt then that's it. That formula would prevent judicial intervention where a jury clearly has disregarded its duty and convicted by evidence not proved beyond a reasonable doubt. In Tibbs our supreme court said:
The weight and the sufficiency of evidence are, in theory, two distinct concepts most often relevant at the trial court level. Sufficiency is a test of adequacy. Sufficient evidence is "such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded." Black's Law Dictionary 1285 (5th ed. 1979). In the criminal law, a finding that the evidence is legally insufficient means that the prosecution has failed to prove the defendant's guilt beyond a reasonable doubt. Burks v. United States, 437 U.S. 1, 16 n. 10, 98 S.Ct. 2141, 2150 n. 10, 57 L.Ed.2d 1 (1978). Weight, at least in theory, is a somewhat more subjective concept. The "weight of the evidence" is the "balance or preponderance of evidence." Black's Law Dictionary 1429 (5th ed. 1979). It is a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other. See In re Estate of Brackett, 109 So.2d 375 (Fla. 2d DCA 1959).
As a general proposition, an appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact. Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable *838 inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment. Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal. [footnotes omitted].
Tibbs, 397 So.2d at 1123.
The duty of the appellate court is to determine, when asked to do so, whether there is substantial, competent evidence to support the verdict and judgment. Tibbs. Here there is some evidence regarding the identity of the attacker; the child identified a photograph of the accused. But in face of the lack of any supporting evidence, the lack of courtroom identification and the unresolved conflict in the evidence, we are bound to say there was a lack of substantial, competent evidence to support the verdict and judgment.
REVERSED.
SHARP, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
Because the eye-witness identification testimony of the victim of the sex crime in this case is uncorroborated and there is other, apparently conflicting, evidence, the majority finds the victim's testimony is not sufficient to convince them beyond a reasonable doubt of the guilt of the accused, reverses the defendant's conviction and sets him free.
Cases are legion holding that the eye-witness testimony of a sex victim is substantial competent identification evidence and, although contradicted, is legally sufficient to sustain a jury verdict and conviction. It is the province of the jury and not the trial or appellate court to weigh the total convincing force and effect (that is, to determine the strength of the probative value) of the entire evidence in the case and to determine if it meets the legal standard as to evidentiary weight (that is, whether it is adequate in quality to convince the jury beyond a reasonable doubt of the guilt of the accused). Accordingly, the majority opinion is consistent with the majority opinion in the classic case of Smith v. State, 239 So.2d 284 (Fla. 2d DCA 1970), and with the opinion in Tibbs v. State, 337 So.2d 788 (Fla. 1976). However, it is in direct conflict with State v. Smith, 249 So.2d 16 (Fla. 1971), and violates the dictates of Tibbs v. State, 397 So.2d 1120 (Fla. 1981).