462 So.2d 471 (1984)
Victor M. ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
No. AP-351.
District Court of Appeal of Florida, First District.
December 3, 1984.
Rehearing and Rehearing Denied January 24, 1985.
*473 Charlene V. Edwards, Asst. Public Defender, Tallahassee, for appellant.
Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
Rehearing and Rehearing En Banc Denied January 24, 1985.
ZEHMER, Judge.
The defendant has appealed his conviction upon a jury verdict finding him guilty of sexual battery and kidnapping to facilitate a felony. He urges four points on appeal, three of which fail to demonstrate error. We find his fourth point meritorious and reverse.
On November 17, 1980, Victor Robinson was charged with sexual battery upon P.R. by the use of physical force not likely to cause serious personal injury, and was also charged with kidnapping P.R. with the intent to commit or faciliate a felony.[1] Robinson pled not guilty and a jury trial was held on July 21-23, 1981. A detailed statement of the facts is necessary to a clear understanding of the case.
The initial witness for the state was the alleged victim, P.R., a student at Florida State University, who testified to the following events. After attending two Halloween/Homecoming parties on the night of October 31, 1980, and having given an intoxicated male acquaintance a ride to his home in the early hours of the following morning, she was driving her car to her home about 4:30 a.m. Upon approaching Campbell Stadium, she made a wrong turn and drove down some railroad tracks for approximately three hundred feet, at which point her car became stuck on the tracks. After sitting in her car for thirty to forty-five minutes and periodically honking her horn, she walked to the football stadium to look for a telephone. Failing to locate a phone, she began walking back to her car when the defendant, Victor Robinson, pulled alongside and offered to help. She accepted his offer and, after getting into his car, a Chevrolet Chevette hatchback, the defendant drove a short distance to a dark area of town and had nonconsensual vaginal and oral intercourse with her. The sexual activity took place in both the front seat and the back of the hatchback automobile. Neither party ever got out of the automobile. The defendant was the only person with whom she had intercourse that night. After the sexual battery, she asked the defendant to take her to the Howard Johnson's restaurant on Tennessee Street, and he did so. As the defendant drove away after dropping her off, she wrote down the car's license plate number and called the police. She informed the police of the foregoing events and of the fact that one of her earrings was missing. At trial, *474 P.R. positively identified the defendant as the man who raped her.
The state also presented testimony by several police officers which established that P.R. was emotionally distraught and crying when interviewed shortly after she called them. One of the police officers testified that on November 1 the defendant was arrested near his home, which was approximately three blocks from the restaurant where the defendant had dropped off P.R. When arrested, the defendant stated that he had given P.R. a ride to that restaurant the night before but that he had not touched her. Another police officer testified that he dusted the defendant's car for fingerprints but found no latent prints identifiable as those of P.R. He also testified that after the defendant's car had been towed to the police station he searched the car and found P.R.'s earring and clip under the driver's seat of the car.
The state also presented testimony that P.R. was taken to a local hospital for routine examination and testing soon after the police responded to her call. As the physical and scientific evidence bears heavily on the defendant's argument regarding the insufficiency of the evidence, we find it necessary to discuss that evidence in some detail.
The physician who examined P.R. testified that she did not have any external bruises or abrasions but exhibited symptoms in her vaginal area which could have resulted from consensual intercourse. A vaginal washing disclosed 6,488 units of acid phosphotase, an enzyme from the male prostatic gland, but no sperm cells.
A microanalyst with the Florida Department of Law Enforcement testified that she found no strands of pubic hair on P.R.'s body that she could identify as possibly coming from the defendant. She found three pubic hairs on P.R.'s clothing, two of which had characteristics similar to P.R.'s hair while the remaining hair was of caucasian character and did not appear to be P.R.'s. She opined that the defendant was unique for a black man because he had negroid head hair but caucasian pubic hair; and although the caucasian pubic hair could have come from the defendant, it could also have come from another male.
The defendant testified on his own behalf that he was a full-time student at Florida A & M University and that on the night of October 31 he went to several parties in a rented Chevrolet Chevette. At approximately 5:30 a.m., he dropped off a friend and then proceeded to another friend's house near Campbell Stadium. While driving on Stadium Drive, he noticed a white female walking on the side of the road attempting to flag him down. The white female, P.R., was crying and asked for the defendant's help, indicating that she wanted to be taken to the Howard Johnson's restaurant on Tennessee Street. P.R. got into his car and he took her to the restaurant and dropped her off. At no time did he sexually assault P.R. That morning, as he was leaving his home to do his laundry, he was stopped by the police and arrested.
The defense also presented the testimony of a chemistry professor who had been doing research for ten years in the field of human reproductive biology and was qualified as an expert. This witness testified that the presence of greater than one hundred units of acid phosphotase in a vagina indicates that intercourse with ejaculation has taken place and that, based upon the presence of 6,488 units in P.R. within three hours after the alleged incident, P.R. definitely experienced at least one episode of intercourse within the previous twenty-four hours with a male who ejaculated a very large amount of semen into her. He stated that the defendant had been tested and found to be very virile, with a high sperm count; that if the defendant had participated in sexual intercourse with ejaculation with P.R., about 300 million sperm cells would necessarily have been found within P.R.'s vagina, but that testing done on P.R. indicated the presence of no sperm cells. He believed that P.R. definitely had intercourse within twenty-four hours of being tested with some other male who either had undergone a successful vasectomy or had a disease which prohibited the formation of *475 sperm. The witness further testified that an enzyme called phosphoglucomutose (PGM) is a component of semen and can usually be classified as one of two types; that the only PGM clearly identifiable within the semen analyzed from P.R. was of a type different from that contained within the defendant's semen; and that although this is not necessarily conclusive, it is very indicative that the defendant did not have sexual intercourse and ejaculation with P.R.
On July 23, 1981, at the close of the evidence, the defendant's motion for acquittal was denied and the jury returned a verdict of guilty on both counts. Defense counsel then made an oral motion for extension of time to file a motion for new trial, and this motion for extension was granted without objection from the state. Subsequently, a written motion for extension was filed and a written order was entered granting the extension, again with no objection by the state. On August 10, within the granted extension period but beyond the ten-day period specified in rule 3.590(a), Florida Rules of Criminal Procedure, the defendant filed a motion for new trial. On October 20, the trial court granted this motion. In the order granting a new trial, the trial judge recognized that the evidence in the case was "technically sufficient" to make a jury issue, but determined the "weight" of the evidence to be "so tenuous as to require a new trial in the interests of justice." The text of the order granting new trial is set forth in the appendix to this opinion.
The order granting a new trial was appealed by the state, and on July 23, 1982, this court reversed on the ground that the trial court lacked jurisdiction to entertain the defendant's motion because under rule 3.590(a) the trial court had no authority to extend the time for filing a motion for new trial. State v. Robinson, 417 So.2d 760 (Fla. 1st DCA 1982). This jurisdictional ruling was considered necessary even though the state did not object to the motion for an extension of time and neither the parties nor the court were aware that such an extension of time was impermissible.
On remand, the defendant made various procedural arguments that were rejected, and the trial court adjudicated the defendant guilty on both counts. The defendant has appealed this final judgment, raising four points.
Initially, we reject the defendant's argument that he made an oral motion for mistrial immediately after the jury verdict was read and that the motion should have been granted. The record indicates that defense counsel merely inquired into possible grounds for a subsequent motion for mistrial and did not actually make such a motion at that time. The defendant's remaining procedural arguments are likewise unsupported by the record.
The defendant has also argued that the trial court erred in denying his motion for judgment of acquittal on the sexual battery count because there was insufficient evidence in the record to sustain a finding of guilt. We reject this contention because the testimony of the alleged victim was legally sufficient to establish a prima facie case for the prosecution.
No corroborative evidence is required in a sexual battery case when the victim can testify directly to the crime and can identify her assailant, although it should be carefully scrutinized so as to avoid an unmerited conviction. Thomas v. State, 167 So.2d 309 (Fla. 1964); see § 794.022, Fla. Stat.(1981). But cf. Huggins v. State, 453 So.2d 835 (Fla. 5th DCA 1984). The physical and scientific evidence in the record that tends to show the impossibility of defendant having been the male involved in sexual intercourse with P.R. does not vitiate the legal sufficiency of P.R.'s testimony, although it does bear heavily on her credibility and the weight of all the evidence tending to support the verdict.
The defendant next argues that the trial court erred in denying his motion for acquittal on the kidnapping charge on the ground that the evidence was legally insufficient, primarily because there was no evidence *476 of any force or threat that was not inherent in the nature of the sexual battery. Section 787.01, Florida Statutes (1979), states:
(1)(a) `Kidnapping' means forceably, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority with intent to:
* * * * * *
2. Commit or facilitate commission of any felony.
The evidence construed in a light most favorable to the state shows that P.R. voluntarily entered the defendant's automobile after the defendant had promised to help her with her car problem. The defendant, without any force or threat, drove P.R. to a dark and isolated area of town and sexually battered her against her will. Although there was no evidence that P.R. actually attempted an escape, there was evidence to show that she was restrained by force during the occurrence of the sexual batteries.
To establish the offense of kidnapping to facilitate commission of a felony, the movement or confinement resulting from the kidnapping:
(a) Must not be slight, inconsequential and merely incidental to the other crime; (b) must not be of the kind inherent in the nature of the other crime; and (c) must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Faison v. State, 426 So.2d 963, 965 (Fla. 1983).
The confinement of P.R. in the defendant's car during the commission of the sexual battery was merely incidental to the crime of sexual battery and was inherent in the nature of that crime. See, Simpkins v. State, 395 So.2d 625 (Fla. 1st DCA 1981). Accordingly, the kidnapping charge cannot be substantiated upon the confinement during the actual act of sexual battery.
Although the transportation of P.R. from the location at which defendant picked her up to the point where the sexual battery allegedly occurred was not shown to be accomplished by physical force or threat, section 787.01, Florida Statutes, provides that kidnapping also means "secretly" confining, abducting, or imprisoning another person against that person's will. The term "secretly" means that the abduction or confinement is intended by the defendant to isolate or insulate the intended victim from meaningful contact or communication with the public. See, Miller v. State, 233 So.2d 448 (Fla. 1st DCA 1970). In the present case, the jury could find from P.R.'s testimony that she was unaware of where she was being taken and that the defendant transported P.R. to an isolated area where there would be no possibility of meaningful contact with members of the public. This act was tantamount to "secretly" abducting and confining P.R. and was legally sufficient to prove the kidnapping charge.
We turn now to defendant's fourth point, that in the interest of justice his conviction should be reversed and the case remanded for a new trial. Defendant states, and we agree, that we have no authority to reverse his conviction on the ground that the verdict is contrary to the weight of the evidence. That issue was firmly settled by the Supreme Court in Tibbs v. State, 397 So.2d 1120 (Fla. 1981). But cf. Huggins v. State, supra. As explained by the Supreme Court, the role of the trial judge in passing on a motion for new trial on the ground that the jury verdict is contrary to the weight of the evidence (rule 3.600(a)(2)) is:
... to weigh the evidence and determine the credibility of witnesses so as to act, in effect, as an additional juror. It follows that a finding by the trial judge that the verdict is against the weight of the evidence is not a finding that the evidence is legally insufficient.
Id., at 1123, n. 9.
The Supreme Court has made it abundantly clear that the only avenue for judicial review of the weight of the evidence is by motion for new trial at the trial court *477 level. Thus, the rules of criminal procedure and the courts continue to recognize the critical need for some form of discretionary judicial review to serve as a safety valve in those cases where the evidence is technically sufficient to prove the criminal charge but the weight of the evidence does not appear to support the jury verdict. Tibbs simply removes the appellate courts from playing any significant role in that process and places sole responsibility for that discretionary decision upon the trial judge.[2] Accordingly, in criminal cases where the evidence of guilt is tenuous, we believe the obligation upon defense counsel to timely file a motion for new trial in order to preserve the defendant's right to judicial review of the weight of the evidence is substantially analogous, if not equal, to defense counsel's obligation to file a notice of appeal in order to preserve the defendant's right to appellate review.
Failure to timely file a notice of appeal is per se ineffective assistance of counsel because a defendant is deprived of his right to appellate review. State v. Meyer, 430 So.2d 440 (Fla. 1983). Since the only judicial review of the weight of the evidence available to an accused is a motion for new trial, a fortiori the failure to timely file such a motion which results in the loss of all judicial review of evidentiary weight should likewise constitute ineffective assistance of counsel, in violation of the defendant's constitutional rights.
Although we are strongly disposed to find that defendant's constitutional right to the effective assistance of counsel has been violated in this case, we need not reach that constitutional issue on this appeal. Instead, we note that the Supreme Court in Tibbs, after having settled upon a new rule precluding appellate courts from reversing on grounds of evidentiary weight, expressly acknowledged that appellate courts continue to have authority to reverse a conviction "in the interest of justice" and emphasized that "each situation is unique." The Supreme Court commented:
By eliminating evidentiary weight as a ground for appellate reversal, we do not mean to imply that an appellate court cannot reverse a judgment or conviction `in the interest of justice.' The latter has long been, and still remains, a viable and independent ground for appellate reversal. Rule 9.140(f) of the Florida Rules of Appellate Procedure (1977) provides the relevant standards:
In the interest of justice, the court may grant any relief to which any party is entitled... .
This rule, or one of its predecessors, has often been used by appellate courts to correct fundamental injustices, unrelated to evidentiary shortcomings, which occurred at trial. Retrial in these circumstances is neither foreclosed, nor compelled, by double jeopardy principles. Each situation is unique. Id., at 1126; accord, Barnes v. State, 406 So.2d 539 (Fla. 1st DCA 1981); review denied, 413 So.2d 877 (Fla. 1982).
Typically a defendant's loss of appellate review due to the untimely filing of a notice of appeal is reviewed by us upon writ of habeas corpus or similar post-conviction remedies, see State v. Meyer, supra. But in this case, we see no need to resort to that circuitous route to deal with defendant's loss of judicial review by motion for new trial. This appeal has been properly perfected, and we have jurisdiction, pursuant to rule 9.140(f), to grant the relief requested by defendant.
We hold that the unique situation presented in this case warrants granting the defendant a new trial in the interest of justice. We do not base this decision on the insufficient weight of the evidence or other evidentiary shortcomings; rather, we hold that deprivation of the defendant's right to any judicial review of evidentiary weight under these unique circumstances constitutes a fundamental injustice. The *478 defendant never waived or intended to forego his right to judicial review of the weight of the evidence pursuant to a motion for new trial under rule 3.600(a)(2), Florida Rules of Criminal Procedure. We must assume that counsel for the defendant and the state, as well as the trial judge, were acting under a good faith misconception as to the applicable rule when the unauthorized extension was granted without objection from the state. Defense counsel's failure to timely file the motion for new trial, which is tantamount to ineffective assistance of counsel, cannot be considered harmless error because his untimely motion was granted by the court.[3] The order granting a new trial was not reversed by this court because it was unsupported by the record; it was reversed because of procedural and jurisdictional defects. We are unwilling to allow a good faith procedural error caused by the ineffectiveness of defense counsel, the state's failure to timely advise the court of its error, and the trial court's misconception of its authority under the applicable rule to override the interest of the courts in seeing that justice is ultimately done.
REVERSED and REMANDED.
ERVIN, C.J., concurs.
BOOTH, J., concurs specially.

APPENDIX

ORDER GRANTING NEW TRIAL
This cause came on to be heard before me on the Motion of the Defendant for New Trial and the Court having presided at trial, heard the evidence presented thereat, reviewed the file, heard argument of respective counsel and being otherwise duly advised in the premises, finds that although the evidence submitted at trial is technically sufficient, the weight thereof is so tenuous as to require a new trial in the interests of justice. Although review of the evidence from the standpoint of weight is now virtually precluded at the appellate court level, such remains the duty and responsibility of a trial judge upon presentation of and ruling on a Motion for New Trial. See Tibbs v. State, 397 So.2d 1120 (Fla. 1981).
The complaining witness testified under oath at trial that Defendant committed the offenses charged; the Defendant testified under oath at trial that he did not. Turning to other significant evidence, the State produced a hair classification expert who testified that the one pubic hair found on the exterior of the garments of the White complaining witness was of Caucasian character and that the Defendant was apparently unique as, in the opinion of the expert, he possessed Negroid head hair and Caucasian pubic hair. Therefore, testified the expert, the Caucasian pubic hair could have come from the Black Defendant. The expert admitted on cross examination that such a circumstance was unprecedented in the expert's experience, study of literature on the subject, knowledge, background and training. For the defense, an expert in the field of reproductive biology testified without contradiction that study, evaluation and analysis of the vaginal washings, test information, sperm count of the Defendant, enzyme classifications and other data led to the inescapable physical conclusion that although the complaining witness had sexual intercourse with someone within 24 hours of the hospital examination, the Defendant could not have been that person.
The foregoing as well as the other evidentiary matter presented at trial was considered closely by this Court in drawing the conclusion reached above in this case where a sentence of life imprisonment plus 15 years could be imposed.
The Court observes that set forth and alleged in the Motion for New Trial was the revelation that the Defendant had taken a polygraph examination given by a licensed operator the day after conviction purporting to establish that the Defendant did not *479 commit the offenses of which he was tried and found guilty. A copy of the results of the examination was attached to the Motion and made a part thereof. No Motion to Strike the subject portion of the Motion or the Exhibit was timely filed. Nevertheless, this Court views that ground and Exhibit to be beyond the ambit of proper examination of the evidence presented at trial and has therefore excluded it from consideration of the weight thereof.
In consequence of the foregoing and upon consideration thereof it is,
ORDERED AND ADJUDGED that the Motion for New Trial is hereby granted.
DONE AND ORDERED in Chambers at Tallahassee, Leon County, Florida this 20th day of October, A.D. 1981.
BOOTH, Judge, specially concurring:
I concur with the result of the majority opinion and would remand for new trial out of deference to the trial court's concern over the weight of the evidence and attempt to grant the defendant a new trial. The procedural irregularities which defeated the grant of the new trial below do not, under the authorities correctly cited by the majority, preclude the award of a new trial by this court.
That said, however, I do not agree with my colleagues' analysis of the evidence, which fails to discuss several reasonable bases for the jury's guilty verdict, including the jury's right to reject in its entirety the testimony of defendant's expert concerning whether the defendant could have been the perpetrator of the sexual assault. The jury was also entitled to disbelieve the alibi of the defendant and to believe the testimony of the victim that she was repeatedly attacked, testimony which was substantiated by medical evidence, and by the other physical findings, including her earring, found in defendant's car under the driver's seat.
Under our system of law, it is uniquely the function of the jury to view the witnesses and determine the credibility of all who testify. The jury applies its collective wisdom and understanding of human nature to supply the best test of truth where evidence is conflicting. The jury function is particularly critical in cases such as this, where it is the testimony of the victim against that of the accused. A jury verdict that is supported by the evidence and not contrary to the weight of the evidence, cannot be set aside either by the trial court or the appellate court.
Despite my disagreement with the majority's analysis of the evidence here, however, I concur in the remand for a new trial, not due to any insufficiency of evidence as viewed from the appellate level, but solely out of deference to the trial court's ruling based on the weight of the evidence.[1]

ON MOTION FOR REHEARING
ZEHMER, Judge.
The state, in its motion for rehearing and suggestion for rehearing en banc, complains in principal part that our decision has the effect of overruling the decision on the state's appeal in State v. Robinson, 417 So.2d 760 (Fla. 1st DCA 1982) (Robinson I), and that in reaching our decision on the instant appeal we necessarily weighed the evidence contrary to Tibbs v. State, 397 So.2d 1120 (Fla. 1981).
A careful reading of our opinion will reveal that we took particular note of the decision in Tibbs v. State, supra, prohibiting appellate courts from weighing the evidence as the basis for reversal. Our decision is predicated entirely upon a procedural error which, because of an apparent common misunderstanding of the rules by the public defender, the state attorney, and the circuit judge, resulted in a fundamental injustice to the defendant that was not intended by any of them. The state's contention that our decision is necessarily predicated on a review of evidentiary *480 weight constitutes a complete misreading of the opinion.
Likewise, there is no "hopeless conflict" between our decision on the instant appeal (Robinson II) and our decison on the state's appeal in Robinson I. Robinson II does not amount to an overruling of this court's decision in Robinson I. The state's appeal in Robinson I was from an order granting a new trial, and the sole issue presented was whether the trial court erred in granting the defendant's motion for a new trial. At the time of that appeal, no judgment of conviction had been entered and there was no pending judgment or order adverse to the defendant from which he could appeal. In Robinson I, we simply held that the motion for new trial was untimely filed and the trial court was without jurisdiction to grant the motion. Since the defendant had no opportunity on that appeal to raise the issues presented on this appeal, the court in Robinson I did not have an opportunity to rule upon the merits of the defendant's questions presented on this appeal. Again we emphasize that unique circumstances in this case gave rise to a fundamental injustice that cannot be treated as harmless error.
The state's motion for rehearing has failed to demonstrate any inconsistency between our decision on this appeal and the decisions in Robinson I and Tibbs v. State, supra. The motion for rehearing and suggestion for rehearing en banc are denied.
ERVIN, C.J., and BOOTH, J., concur.
NOTES
[1] § 794.011(5) and § 787.01, Fla. Stat. (1979).
[2] The court in Tibbs left unresolved whether an appellate court will nevertheless be permitted to reweigh the evidence in reviewing a trial court order granting or denying a motion for new trial on this ground. 397 So.2d at 1123, n. 12.
[3] If the merits of the order granting a new trial were properly before us for review, which they are not, we would be hard pressed to justify reversal on the ground of abuse of discretion. See note 2, supra.
[1] Trial court's order granting new trial, in part:

"Although the evidence submitted at trial is technically sufficient, the weight thereof is so tenuous as to require a new trial in the interest of justice."