579 So.2d 264 (1991)
Joel McNAIR, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 88-01262.
District Court of Appeal of Florida, Second District.
May 3, 1991.
*265 Sharon Bradley of Daley & Miller, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellee.
ALTENBERND, Judge.
Joel McNair appeals his convictions for racketeering and fifty-two counts of grand theft. The state cross-appeals his downward departure sentence. We affirm the convictions and discuss only one of Mr. McNair's issues. We decline to review the state's untimely cross-appeal.
During jury selection, the state used two peremptory challenges to exclude black venire members. A third black venire member remained on the jury. Mr. McNair argues that the use of these peremptory challenges requires a new trial. We disagree.
It is not entirely clear that Mr. McNair carried his initial burden on this issue so that the state had an obligation to justify its peremptory challenges under State v. Neil, 457 So.2d 481 (Fla. 1984). See Green v. State, 572 So.2d 543 (Fla. 2d DCA 1990). In this case, the state did not strike the only minority venire member or all minority venire members. See Reynolds v. State, 576 So.2d 1300 (Fla. 1991). On the other hand, the fact that the state left one minority juror on the panel does not eliminate the possibility that other jurors were challenged for racial reasons. Smith v. State, 571 So.2d 16 (Fla. 2d DCA 1990).
Mr. McNair chose to represent himself at trial. His objections concerning the jury selection process are not as articulate as one might expect from a trial attorney. It is apparent that the state was willing to justify its challenges on racially neutral grounds without requiring Mr. McNair to actually establish a doubt about the likelihood that the state was using its challenges improperly. See Thompson v. State, 548 So.2d 198 (Fla. 1989). Thus, the trial court considered the state's reasons without ever ruling that Mr. McNair had established the doubt required for a Neil hearing. Since we hold that the trial court could properly accept the reasons provided by the state for its use of peremptory challenges, we decline to consider this threshold issue.
The state used a peremptory challenge to strike Ms. Battle, a black woman. The state based its challenge on grounds that Ms. Battle had a sister who worked in the state attorney's office. There is no dispute that this reason is a race-neutral reason which would normally allow the use of a peremptory challenge. In this case, *266 however, the state confused Ms. Battle with Ms. Howes. The record reflects that it was Ms. Howes who revealed that her sister worked in the state attorney's office. Ms. Howes' revelation occurred immediately after Ms. Battle had answered various questions during jury selection. It is apparent that the trial judge, the prosecutors, and the other attorneys who were involved in jury selection did not realize they had confused the two prospective jurors. Mr. McNair did not object to the state's explanation and did not inform the trial court that the prospective jurors had been confused. "Once the state has proffered a facially race-neutral reason, a defendant must place the court on notice that he or she contests the factual existence of the reason." Floyd v. State, 569 So.2d 1225 (Fla. 1990). Thus, if there is any error concerning this peremptory challenge, it has not been preserved for review.
The state's second and final peremptory challenge of a minority venire member concerns another black woman. The prosecutor explained that he was striking this prospective juror because her answers to his and Mr. McNair's questions indicated that she would be unable to understand the presumption of innocence. The prosecutor expressed his concern that this person might have some difficulty understanding the other aspects of trial. We are satisfied that an inability to understand the presumption of innocence may be a valid, race-neutral reason to exercise a peremptory challenge. This prospective juror's answers do reflect some confusion, even though the questions which elicited those responses were not examples of clarity. In the written transcript, it appears that some prospective jurors gave better answers, while others gave answers as confusing as this woman's answers.
In light of the answers given by other prospective jurors, it is more difficult for this court to determine whether the state's racially neutral reasons were pretextual. Under the guidelines of State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), the state must provide record support for its reasons and the absence of pretext when the record includes a factor suggesting pretext. One of the five factors identified in Slappy is "a challenge based on reasons equally applicable to jurors who were not challenged." Slappy, 522 So.2d at 22. From this record, it appears that the other prospective jurors might have been equally confused.
There are valid reasons for striking a prospective juror which can be very obvious in a courtroom and yet somewhat camouflaged within the appellate record. Demeanor, attitude, and juror confusion are sometimes apparent to the live participants while the record permits an appellate panel only a limited, vicarious view of the problem. We are hesitant to eliminate all reasons for peremptory challenges which cannot be easily recognized within the written record. On the other hand, we must have the ability to review and control this constitutionally important phase of the trial.
The supreme court has emphasized that this function places "great responsibility and discretion" on the trial judge. Slappy, 522 So.2d at 22. In this case, the trial court permitted the peremptory challenge after questioning the prosecutor. At the conclusion of jury selection, the trial judge stated that he saw "nothing to indicate" that the peremptory challenges had been improperly used. While appellate review would be easier if the trial judge had verbally articulated his own observations about the challenged venire member's confusion and the reasons permitting him to accept the state's grounds to exercise its peremptory challenge, such findings are not essential to uphold the trial court in this case. On this record, which does provide some support for the trial court's ruling, we believe that we should defer to the decision of the experienced trial judge who was present during the critical process of questioning the prospective jurors.
Turning to the cross-appeal, the trial court sentenced Mr. McNair to a total of twenty-five years' imprisonment. This sentence is a two-cell downward departure from the recommended range at the time of sentencing. The state did not file a *267 notice of appeal within fifteen days of the rendition of the sentence. It did not file a timely notice of cross-appeal. It did file an untimely notice of cross-appeal, but never moved for leave of court to do so. Assuming a downward departure may be cross-appealed under Florida Rule of Appellate Procedure 9.140(c)(1)(H), as well as directly appealed under Florida Rule of Appellate Procedure 9.140(c)(1)(J), we choose not to review this sentence because of the untimely notice of cross-appeal. Fla.R.App.P. 9.140(c)(2), 9.420(d).
Affirmed.
DANAHY, A.C.J., and PARKER, J., concur.