762 So.2d 1024 (2000)
Frank CARTER, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D98-927.
District Court of Appeal of Florida, Third District.
July 19, 2000.
Bennett H. Brummer, Public Defender, and Maria E. Lauredo, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Simone P. Firley and Frank J. Ingrassia, Assistant Attorneys General, for appellee.
Before COPE, GODERICH and FLETCHER, JJ.
*1025 COPE, J.
Frank Carter appeals his conviction of sexual battery, kidnapping, armed robbery, and aggravated battery. We affirm.
Defendant-appellant Carter first contends that the trial court should have suppressed evidence the police seized in a search of his room. He acknowledges that he consented to the search, but argues that he later withdrew that consent.
The crimes in this case occurred in a gym at an apartment complex. The victim described her assailant and informed the police that after raping her, the assailant had stolen her earrings, a watch, and her panties. The security guard for the complex told the police that he had seen an individual lurking around the gym who had entered the building around the time of the attack. He did not know the individual's name, but recognized him as a resident of the apartment complex and directed the police to the apartment where he resided.
The police went to the apartment and found it was occupied by defendant's mother and stepfather, with whom the defendant resided. Defendant's parents gave written consent to search the entire apartment, except for the parents' own bedroom.
The officers heard a noise in one of the bedrooms and found defendant there. He agreed to accompany the officers to their vehicle for questioning. While in the doorway of defendant's bedroom, one of the officers saw an earring and watch on the floor.
A detective approached the defendant to obtain consent to search his bedroom, and defendant gave written consent. After he did so, he asked if he could be present during the search, and the detective agreed.
In the meantime, the security guard approached the police vehicle and identified the defendant as the person he had seen enter the gym. Defendant became angry and began screaming at the security guard. Because of this behavior, the officers decided to leave the defendant in the police vehicle while they searched his bedroom. Defendant said, "That's not fair. I could be there. That's not fair.... You promised that I would be able to be there when you searched my apartment.... It's not right." The search of the bedroom turned up the earrings, watch, panties, and some bullets.
Defendant moved to suppress this evidence, contending that he had withdrawn his consent by the statements he made to the police officers when they made clear that they were going to leave him in the police car while they conducted the search. The State first argues that the defendant's consent, or lack of consent, was immaterial because the parents had already consented to a search of the apartment (except the parents' own bedroom), and that the parents' consent included the defendant's bedroom. We reject this argument on authority of Silva v. State, 344 So.2d 559 (Fla.1977). The defendant was an adult, residing in the parents' home. The Florida Supreme Court has said:
It is only reasonable that the person whose property is the object of a search should have controlling authority to refuse consent. His rights are personal to him and derive from the United States Constitution. Katz v. United States, 389 U.S. 347,88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Though a joint occupant should have authority to consent to a search of jointly held premises if the other party is unavailable, a present, objecting party should not have his constitutional rights ignored because of a leasehold or other property interest shared with another. This is particularly true where the police are aware that the person objecting is the one whose constitutional rights are at stake.
Id. at 562-63 (footnote omitted); see also Smith v. State, 465 So.2d 603, 604 (Fla. 3d DCA 1985). The police in this case followed proper procedure by requesting defendant's consent. The parents' consent *1026 was not controlling where the area to be searched was the defendant's bedroom and defendant was physically present.
We conclude, however, that the defendant did not effectively withdraw his consent. The defendant initially gave a written consent to search his bedroom. After he did so, he requested leave to be present when the search was conducted, and the police agreed. Thereafter, defendant became angry and unruly when the security guard approached the police car and identified him. When the police officers decided to conduct the search without the defendant being present, the defendant complained that the police had broken their promisebut defendant never in words or substance told the police to stay out of his room or otherwise conveyed the idea that he was revoking his consent. The question of accompanying the officer was raised by the defendant only after he had given his consent. Since the initial consent was unconditional, and the defendant did not later revoke that consent, it follows that the motion to suppress evidence was properly denied.
Defendant next argues that the court should have refused to allow the State to peremptorily challenge an African American juror, Juror Wilson. During jury selection, the State asked Juror Wilson questions about reasonable doubt. The juror asked counsel to repeat one of the questions, and after it was repeated, answered it.
When the jurors were being chosen, the State struck Juror Wilson peremptorily, and the defense asked for a race neutral reason. The State indicated that Juror Wilson had been confused by one of the hypothetical questions regarding reasonable doubt and that it had been necessary to go over the question two additional times with the juror. The trial court ruled that this was a race neutral reason, and overruled the defense objection.
The fact that a juror is having difficulty understanding the concept of reasonable doubt is, on its face, a race-neutral reason for a peremptory challenge within the meaning of Melbourne v. State, 679 So.2d 759, 764 (Fla.1996). See Soto v. State, 751 So.2d 633, 637 (Fla. 4th DCA 1999). Defendant does not say otherwise. Defendant argues, however, that the State was wrong in saying that Juror Wilson had difficulty with the concept of reasonable doubt. The transcript indicates that she answered each of the questions correctly.
The difficulty we have with the defendant's position is that the defendant did not call the State's error to the attention of the trial court. As the Florida Supreme Court said in Floyd v. State, 569 So.2d 1225 (Fla.1990):
It is the state's obligation to advance a facially race-neutral reason that is supported in the record. If the explanation is challenged by opposing counsel, the trial court must review the record to establish record support for the reason advanced. However, when the state asserts a fact as existing in the record, the trial court cannot be faulted for assuming it is so when defense counsel is silent and the assertion remains unchallenged. Once the state has proffered a facially race-neutral reason, a defendant must place the court on notice that he or she contests the factual existence of the reason. Here, the error was easily correctable. Had' defense counsel disputed the state's statement, the court would have been compelled to ascertain from the record if the state's assertion was true. Had the court determined that there was no factual basis for the challenge, the state's explanation no longer could have been considered a race-neutral explanation, and Juror Edmonds could not have been peremptorily excused. Because defense counsel failed to object to the prosecutor's explanation, the Neil[1] issue was not properly preserved for review. *1027 569 So.2d at 1229-30 (emphasis added); see McNair v. State, 579 So.2d 264, 266 (Fla. 2d DCA 1991) (following Floyd). Cf. Nunez v. State, 664 So.2d 1109, 1111-12 (where defense requested review of prospective juror's voir dire testimony, point was preserved for appellate review). Defendant relies on Gilliam v. State, 645 So.2d 27 (Fla. 3d DCA 1994), but Gilliam is silent on the preservation issue, and obviously the Floyd decision is controlling.
Defendant next contends that his motion for judgment of acquittal should have been granted with respect to the offense of kidnapping. He contends that under the facts of the present case, the movement of the victim within the gym was insufficient to constitute the offense of kidnapping within the meaning of Faison v. State, 426 So.2d 963 (Fla.1983).
To begin with, we note that the State charged the defendant under two different alternatives in the kidnapping statute. The relevant provisions are as follows:
787.01 Kidnapping; kidnapping of child under age 13, aggravating circumstance.
(1)(a) The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
. . . .
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
. . . .
§ 787.01, Fla. Stat. (Supp.1996).
Paragraph three criminalizes, so far as relevant here, the confining or abducting of the victim with intent to inflict bodily harm upon or terrorize the victim. The Faison test does not apply to that part of the kidnapping statute. See Bedford v. State, 589 So.2d 245, 251 (Fla.1991); Biggs v. State, 745 So.2d 1051, 1052 (Fla. 3d DCA 1999); Waddell v. State, 696 So.2d 1229, 1229-30 (Fla. 3d DCA 1997); Chaeld v. State, 599 So.2d 1362, 1364 (Fla. 1st DCA 1992). Thus, the motion for judgment of acquittal was properly denied with regard to the charge under paragraph three.
Although that conclusion is sufficient to dispose of the defendant's claim, we also think that the trial court correctly denied the motion for judgment of acquittal with respect to paragraph two, the charge of confining or abducting the victim with intent to commit or facilitate commission of any felony. The evidence showed that the defendant entered the gym while the victim was alone in the public exercise area. He robbed her at gunpoint and then directed her through a doorway into a nearby hallway. Although the movement was only three feet, the effect was to hide the victim and defendant from the view of anyone who might enter the gym, thus making detection of the crime considerably more unlikely.
The facts here bear resemblance to Faison itself, where one of the victims was dragged from her desk in front of a large window to the rear of the same office where the defendant sexually assaulted her. The defendant then forced her into a nearby restroom and raped her again. See Faison, 426 So.2d at 964. The court found that those facts sufficiently established the crime of kidnapping. See id. Likewise similar are Nino v. State, 744 So.2d 528 (Fla. 3d DCA. 1999), where the defendant forced the victim from the hallway of a fast food restaurant into the restroom where he sexually assaulted her, and Lamarca v. State, 515 So.2d 309 (Fla. 3d DCA 1987), where the defendant entered the ladies restroom in a store, forced the victim into a restroom stall, and sexually assaulted her. See id. at 310-11. The motion for judgment of acquittal was properly denied with respect to paragraph two of the kidnapping statute.
Defendant argues that there should be a new trial because the State brought out hearsay evidence from a police officer *1028 that the defendant owned a gun. Prior to trial, defense counsel made a motion in limine to exclude any hearsay statements any of the defendant's family members may have made to police officers while the police officers were at the apartment. The prosecutor agreed.
While one of the officers was on the stand, the following exchange occurred:
[PROSECUTOR]: There is one question I forgot to ask you. While you were searching the defendant's bedroom, did the defendant's brother come home and help you search for something?
[WITNESS]: Yes, he did.
[PROSECUTOR]: What was he helping you search for?
[WITNESS]: For a gun that he knew was there.
[PROSECUTOR]: And was one found?
[WITNESS]: No.
After the State concluded its direct examination, defendant requested a sidebar conference and asked whether the officer had testified about the brother's statement. Counsel explained that she had difficulty hearing the witness and that the defendant had been speaking to her during the testimony. Upon confirmation that the officer had testified about the brother's statement, defendant objected that the testimony was in violation of the motion in limine and moved for a mistrial. Defendant argued that the testimony was prejudicial because the hearsay statement of the brother confirmed that the defendant owned a gun, and the charged crimes were committed with the use of a gun. The trial court denied the motion for mistrial, because there had not been a timely objection when the testimony came in.
We conclude that the court's ruling was within its discretion. Assuming arguendo that there was error (and we think there was none), it was harmless beyond a reasonable doubt. While the search did not turn up a gun, it did turn up bullets. The defendant was identified by the victim and the security guard. The defendant had the victim's jewelry and panties in his bedroom, for which there was no plausible explanation whatsoever.
Affirmed.
NOTES
[1] State v. Neil, 457 So.2d 481 (Fla.1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986).