868 So.2d 553 (2004)
Lawrence Gary CORNER, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D01-2873.
District Court of Appeal of Florida, Third District.
January 28, 2004.
Rehearing and Rehearing Denied March 26, 2004.
*554 Bennett H. Brummer, Public Defender, and Roy A. Heimlich, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Thomas C. Mielke, Assistant Attorney General, for appellee.
Before GERSTEN, RAMIREZ, and SHEPHERD, JJ.
Rehearing and Rehearing En Banc Denied March 26, 2004.
SHEPHERD, J.
Defendant Lawrence Corner appeals his conviction on two grounds of error. Corner claims that his conviction for kidnapping was not sufficiently independent of the underlying crime of sexual battery to be considered as a separate count before the jury. He further charges the lower court with error for admitting evidence of former similar rapes under Williams v. State, 110 So.2d 654 (Fla.1959) and its progeny. We find no error on the kidnapping issue and affirm. Furthermore, from an appellate vantage point, we find no abuse of discretion on the admissibility of Williams type evidence and affirm. White v. State, 817 So.2d 799 (Fla.2002); Ray v. State, 755 So.2d 604 (Fla.2000).
Lawrence Corner is no stranger to the criminal justice system. Unfortunately, his prior entanglements, like the one at bar, have involved sexual misdeeds on minor girls. In the case sub judice, the victim, S.G., met the Defendant in November 1999 as she was walking along the street with one of her friends. She was only fifteen (15) years old at the time. The Defendant approached her to see if she could "do hair," and informed her that he had an eight year old daughter in need of a stylist. The two apparently set up a time to render the hair services, but the appointment was not kept.
Several weeks later, the Defendant arrived at the home of S.G.'s godmother where S.G. was staying because her mother was in and out of rehab. In his vehicle, Defendant brought with him two of S.G.'s younger brothers and their friend. The Defendant approached the godmother and told her that he was a friend of S.G.'s family, and that he had come to take S.G. home to reunite her with her mother. Defendant also made promises that he was going to buy S.G. clothes and personal items. S.G. entered Defendant's car, and he proceeded to drive her and her brothers to her mother's house, where he let the brothers out, but stopped S.G. from leaving and drove off with her. Defendant then went to a secluded location at a nearby elementary school and parked the car. With the car doors locked, Defendant proceeded to rape S.G. After the assault, Corner returned the victim to her godmother's house. Feeling dirty, S.G. showered and went to bed. The following day, the godmother confronted S.G., and immediately took her to the hospital. The medical report was consistent with vaginal penile penetration.
As previously indicated, history has a way of repeating itself for Corner. In February 1992, Corner had assaulted another minor female, S.F., who at the time was thirteen (13). He lured S.F. along with a friend into his car under the ruse of buying them a balloon. He then asked if they wanted food, and upon the friend's profession of hunger, gave her some money and dispatched her to a nearby McDonald's restaurant. As the friend exited the car, Corner grabbed S.F.'s arm and sped off to an abandoned duplex apartment *555 where he forced her to pose nude for pictures and raped her.
Similarly, in July 1999, three months before assaulting S.G., Defendant approached another young girl, T.S., who was then sixteen (16) years old, as she was walking home from school. As with S.G., Defendant asked T.S. her name and if she could "do hair" for a niece, and offered her a ride home. Instead, he took her to an isolated park, made her pose nude under protest for photos, and then raped her.
The lower court allowed both T.S. and S.F. to testify in the trial where S.G. was the victim for the purpose of proving lack of consent on the part of S.G. and preparation or plan on the part of the defendant. The jury returned a verdict of guilty on the counts of sexual battery and kidnapping. We affirm.
The Defendant has urged this Court to find that his kidnapping and confinement of S.G. was inherent in and incidental to the nature of the sexual battery committed of her. We disagree. The Florida kidnapping statute was construed in Faison v. State, 426 So.2d 963 (Fla. 1983), where the Supreme Court held:
[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Understandably, the rationale behind this rule is to preclude a second conviction for kidnapping when the confinement was merely a part of the underlying felony. Braggs v. State, 789 So.2d 1151, 1153 (Fla. 3d DCA 2001).
In this case, the movement or confinement of S.G. was not merely "a part of the underlying rape. The fact that S.G. did not expressly or vehemently resist remaining in the car does not infer that she consented to being in the vehicle after her brothers were dropped off and she was taken to the isolated school at nighttime. In Rancourt v. State, 766 So.2d 1071, 1073 (Fla. 2d DCA 2000), the court held that "[a]lthough the victim accepted a ride from [defendant], Rancourt essentially abducted her by traveling well beyond the predetermined destination without offering an explanation as to why." Similarly here, S.G. testified that the Defendant stopped her from leaving the car when her brothers got out. He then drove around with her for some period of time before arriving at a secluded location, and committing the rape in the locked vehicle. The law is well established that where the movement or transportation of a victim is not inherent in the crime of sexual assault, a conviction for kidnapping will be sustained. Robinson v. State, 462 So.2d 471 (Fla. 1st DCA 1984) (kidnapping charge sustained where stranded motorist voluntarily accepted a ride from defendant only to be later taken to deserted area to be sexually assaulted); Ferguson v. State, 533 So.2d 763 (Fla.1988) (asportation was not inherent in the crime of robbery which could have been committed on the spot without any movement whatsoever).
In Robinson, the court interpreted kidnapping under Florida Statutes, section 787.01, as meaning
"secretly" confining, abducting, or imprisoning another person against that person's will.... The term "secretly" means that the abduction or confinement is intended by the defendant to isolate *556 or insulate the intended victim from meaningful contact or communication with the public.
Robinson at 476. The court specifically stated that an act of transporting a victim "to an isolated area where there would be no possibility of meaningful contact with members of the public" would be "tantamount to `secretly' abducting" and "legally sufficient to prove the kidnapping charge." Id. In Carter v. State, 762 So.2d 1024, 1027 (Fla. 3d DCA 2000), we held that there was sufficient evidence to establish kidnapping where a defendant cornered the victim in a gym and directed her into a nearby hallway, such that "the effect was to hide the victim and defendant from the view of anyone who might enter the gym, thus making detection of the crime considerably more unlikely." In Faison, 426 So.2d at 964, there was sufficient evidence to establish kidnapping where the victim was dragged from her desk in front of a large window to the rear of the same office to be raped, and then again into a nearby restroom to be raped again.
In this case, the testimony reveals that S.G. only accepted a ride to her mother's house and did not consent to going any further. Corner whisked off S.G. in his vehicle to a secluded school at nighttime. S.G.'s ability to escape was curtailed by the car doors being locked prior to the rape and the ensuing crime was made less detectable by Corner's choice of location. As such, there were sufficient actions of the transportation and selection of location which constitute the independent basis for the kidnapping charge, apart from the sexual battery. The fact that S.G., a minor, may not have quickly realized what was going to happen to her is of no legal consequence. The criminality resides in Corner's actions of "confining or abducting of the victim with the intent to inflict bodily harm upon or terrorize the victim." Carter at 1027, citing § 787.01, Fla. Stat. (Supp.1996). There was sufficient evidence for a jury to conclude beyond a reasonable doubt that S.G. was kidnapped. Sutton v. State, 834 So.2d 332 (Fla. 5th DCA 2003). Accordingly, the conviction for kidnapping is affirmed.
The Defendant also argues to this Court that the testimony of T.S. and S.F. and his interactions with them were irrelevant and prejudicial to his defense of his actions with S.G. Williams v. State, 621 So.2d 413 (Fla.1993), an offspring of the original Williams decision, found at 110 So.2d 654 (Fla.1959), allows the evidence of collateral crimes when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, common scheme or a general pattern of criminality. The Williams Rule is codified at § 90.404(2)(a), Fla. Stat. (2002).
The broad rule of admissibility is that subject to a few exceptions, all relevant evidence except as to character or propensity is admissible. Williams, 110 So.2d at 659. When considering collateral crimes for admissibility, "[t]he test of admissibility is relevancy," and the "test of inadmissibility is lack of relevancy." Id. at 659-60. "If the proffered evidence is relevant to a material fact in issue, it is admissible even though it points to a separate crime." Id. at 660. This is so "whether the evidence tends to exculpate or convict, if it is relevant; that is, if it bears a certain relation to the crime charged to the extent that it is relevant to a fact in issue." Id. at 661 (emphasis in original).
In the latter Williams case of 1993, we held that collateral crimes evidence of a prior sexual battery is permitted if it has "a logical relationship to some material aspect of the charged crime beyond the character of the defendant or his propensity to force himself on women." Williams, *557 621 So.2d at 415. "Such evidence may be relevant to the issue of consent." Id. at 416. In this case, consent became a pivotal issue. Corner was initially charged under §§ 800.04(4) and (5), Fla. Stat. (2002), with statutory rape, however, these counts were dropped, leaving this case in the posture of a standard sexual assault case under § 794.011(5), Fla. Stat. (2002), which generally hinges on whether or not the victim consented. Knowing "consent" would be the gravamen, Corner in his opening statement to the jury announced that his defense was to prove that S.G. consented to the sexual encounter. In Vural v. State, 717 So.2d 65, 67 (Fla.3d DCA 1998), this court held that "no error occurs" where Williams type evidence is admitted "to refute the assertion that the victim consented to the affronts." Accordingly, there was no error for admitting collateral evidence testimony to disprove the defense of consent.
Moreover, the testimony of S.F. and T.S. should have been admitted to affirmatively show that Defendant Corner was engaged in a common scheme, plan or preparation to take sexual license with minor girls, i.e. that there is a "logical relationship" between all three incidents. Williams, 621 So.2d at 415. In Vural, the defendant's activities with others "were quite similar as to the time of day of the occurrences, lack of witnesses in his offices, sexual touching and kissing, and other relevant similarities," such that the testimony was "classic Williams Rule evidence to show motive, common scheme and design." Id. at 67. In the original Williams case, the court held that collateral evidence of a prior rape was admissible when "the accused had approached the other women in a manner very similar to his approach to the prosecutrix." 110 So.2d at 662 (defendant had been able to rape prior victim and prosecutrix by hiding in the back seat of car).
Against this backdrop of well established Florida law, we find that in this particular instance, the modus operandi of Corner is sufficiently similar in all three of his sexual encounters with minor females. From his smooth approach to initiate contact under the facade of needing a hairstylist for a girl relative, to his tactic of luring victims into his vehicle under the false assurances of a buddy system, to his seductive promises of buying items which a minor girl might want, to his transporting them to secluded locations, all show a criminal mind prepared and engaged in a plan to take sexual offense at unsuspecting minor girls. Undoubtedly, a common thread weaves together these three unfortunate episodes. We find no error or abuse of discretion for allowing in the Williams type testimony of S.F. and T.S.
Affirmed.