607 So.2d 454 (1992)
John Davenport GAY, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2751.
District Court of Appeal of Florida, First District.
September 25, 1992.
Rehearing Denied December 2, 1992.
*456 Nancy A. Daniels, Public Defender, and Kathleen Stover, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for appellee.
MINER, Judge.
Between October 10, 1989 and January 4, 1990, appellant, John Davenport Gay, was charged in 17 different informations containing a total of 88 counts alleging various sex offenses committed on at least 9 grammar school age boys. A jury trial on some of the offenses resulted in guilty verdicts of seven counts of lewd and lascivious acts upon a child, one count of sexual battery on a child under 12 and two counts of kidnapping. On another count charging capital sexual battery, the jury found Gay guilty of attempted sexual battery and on another count, guilty of an attempted lewd act in the presence of a child. Appellant was acquitted on three counts charging lewd and lascivious acts in the presence of children.
After his jury trial, appellant entered nocontest pleas to numerous of the charged offenses and others were nolle prossed. He was subsequently sentenced to two consecutive life sentences to be followed by three concurrent life sentences and an additional 245 years concurrent incarceration on the lesser charges.
Urging four points on appeal, appellant challenges all his convictions. On the record before us, we find no merit in any of the issues raised by appellant and affirm his convictions.
Appellant contends that the trial court reversibly erred in the following respects: (1) in denying appellant's motion to suppress the photos of J.Y. and B.B. found in appellant's camera case; (2) in denying appellant's motion for judgment for acquittal of the offense of capital sexual battery on the child, F.B.; (3) in denying appellant's motion for judgment for acquittal of the offenses of kidnapping of J.Y. and B.B.; and (4) in admitting pedophile profile testimony by an expert witness. To promote ease of understanding and so as not to burden the state's jurisprudence with lurid and superfluous factual details, we will deal with each issue raised by appellant in a separate sub-heading and recount only those facts of record necessary to place the issue discussed in proper context.

THE KIDNAPPING ISSUE
Appellant, apparently an accomplished photographer, was also employed at a business establishment that specialized in the rental of movie videos. Mr. and Mrs. Y, the parents of J.Y., a ten-year old boy, were frequent patrons of the business and, on occasion, would take J.Y. with them on these visits. It was during these times that appellant came to know J.Y. and his parents. In time, appellant began to visit the Y's at their home and beginning in January of 1989, he asked for and received permission from Mr. and Mrs. Y to take J.Y. out to get hamburgers, to go swimming or to participate in other like activities.
On October 1, 1989, appellant stopped by the Y's home to ask J.Y. if he wanted to go swimming at a pool on the campus of the University of West Florida (UWF). In appellant's presence, J.Y. asked his parents for permission to go swimming with appellant. The parents agreed and J.Y. left with appellant. After appellant and J.Y. got into appellant's car, appellant asked the boy if he wanted to invite one of his young friends to go swimming with them. J.Y. wanted to ask B.B. and the two drove to B.B.'s house. B.B.'s mother was not at home so J.Y. asked for and received permission from B.B.'s father for B.B. to go with them to the UWF pool. That evening, Mr. and Mrs. Y received a phone call from *457 B.B.'s mother alerting them to the possibility of improper conduct on appellant's part, based upon what she had been told by B.B. of the events of that afternoon. The following day, the two boys were taken by their parent(s) to the police station at the campus of the UWF. They were interviewed and told Officer Thomas Johnson that appellant had fondled their genital areas the previous day in a wooded area known as the "nature trail" located on the UWF campus.
The kidnapping charges of which the appellant was convicted stemmed from his taking the two children from the pool area where they had parental permission to go swimming to a spot on the nature trail where he allegedly subjected the boys to felonious sexual indignities, which offenses included taking nude photographs of them.
Acknowledging that the nature trail may have been the site of a lewd act, appellant maintains that he did not kidnap the boys but merely "deviated" from his plan to take them to the pool. He recounts that on a previous occasion when he had permission to take J.Y. swimming at the UWF pool, the two had to go swimming elsewhere because the UWF pool was closed. On another occasion when he had permission to take J.Y. to the UWF pool, he took the boy to a McDonald's for something to eat after their swim. He argues that on these occasions, J.Y.'s parents did not know precisely where the child was at all times during the excursion and did not specifically give their approval to what he characterizes as a "slight deviation" from the day's plans. Thus, he contends that on the day in question, the "slight deviation" from the public pool area to the wooded nature trail did not amount to kidnapping.
The state counters that J.Y.'s mother testified at trial that she only gave her permission for J.Y. to go swimming at the UWF pool. Further, J.Y. testified that when appellant asked him and B.B. to go from the pool to the nature trail, he (J.Y.) did not want to go because he did not know if he had permission to do so. The boy also testified that appellant told him if he did not come along with them he would have to sit in the car until appellant and B.B. returned. Only then did J.Y. relent and go with appellant and B.B.
At the end of the state's case and again at the conclusion of the trial, appellant unsuccessfully moved for a judgment of acquittal on the kidnapping counts. In so doing, he admitted the facts adduced in evidence and every conclusion favorable to the state which is fairly and reasonably inferable therefrom. Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975) (footnote ommitted). Where the state has produced competent evidence to support every element of the crime, a judgment of acquittal is not proper. Anderson v. State, 504 So.2d 1270 (Fla. 1st DCA 1986) (citing Newton v. State, 490 So.2d 179, 180 (Fla. 1st DCA 1986)).
Section 787.01, Florida Statutes (1989), provides, in pertinent part:
(1)(a) The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
* * * * * *
(1)(a)2. Commit or facilitate commission of any felony.
* * * * * *
(1)(b) Confinement of a child under the age of 13 is against his will within the meaning of this subsection if such confinement is without the consent of his parent or legal guardian.
Thus, in order to withstand the motion for judgment of acquittal below, the state must have presented evidence to show appellant: (1) forcibly, secretly, or by threat (2) confined, abducted or imprisoned [the children] with (3) the intent to commit or facilitate commission of any felony. In the case at bar, the critical questions raised are: were J.Y. and B.B. (1) confined (2) without the consent of their parents (so as to invoke the statutory presumption in paragraph (1)(b)), (3) by force, secret or threat?
Taking the third element first:

*458 The term "secretly" means that the abduction or confinement is intended by the defendant to isolate or insulate the intended victim from meaningful contact or communication with the public. Robinson v. State, 462 So.2d 471, 476 (Fla. 1st DCA 1984).
Given the facts of this case, we believe the jury could reasonably infer that J.Y. and B.B. were taken to the nature trail because it was more isolated than the pool area. Thus, we find this element of the offense is sufficiently satisfied to withstand a motion for judgment of acquittal. Additionally, J.Y. testified that appellant told him that if he did not go with appellant and B.B. on the nature trail he would have to stay in the car. We are of the view that, for a 10-year old child, this constitutes a "threat" sufficient to satisfy this element of the offense of kidnapping.
Turning now to the question of parental consent, there is testimony from Mr. and Mrs. Y that J.Y. "only had permission to go swimming." M.B., the father of B.B., also testified that B.B. did not have permission to go on the nature trail. Even though one might question the wisdom of the statutory presumption involved here, this presumption, in our view, is satisfied. Therefore, we conclude that the confinement of the children involved in this case was "against their will." The presumption, however, does not answer the more basic question of whether the children were "confined, abducted or imprisoned." In its brief, the state seems to rely on a confinement theory.
[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Faison v. State, 426 So.2d 963, 965 (Fla. 1983). Satisfaction of each of the three prongs of the Faison test is necessary to support a conviction for kidnapping. Kirtsey v. State, 511 So.2d 744, 745 (Fla. 5th DCA 1987). In the present case, we find the movement of the children to the nature trail against their will (applying the statutory presumption) was not slight, inconsequential and incidental to the crime. Second, movement of the children to the nature trail was not necessarily required in the commission of the crimes, which could have been accomplished at the pool without any asportation whatever. Third, the movement to the nature trail was intended to lessen the risk of detection.
Given the above analysis with respect to the evidentiary support for the elements of the offense, and because there is little doubt of appellant's intention to commit a felony on the nature trail, we hold that the trial judge correctly denied appellant's motion for judgment of acquittal on the kidnapping charges.

THE SEXUAL BATTERY ISSUE
With respect to the charge of capital sexual battery upon F.B., a third grader, the child testified that he had known appellant for two years and had been to the UWF pool with him on numerous occasions. To a question posed by the prosecutor whether, in the shower at the UWF pool, appellant ever tried to do anything with his penis to F.B., the boy answered that Gay "tried to stick it [his penis] in my butt crack." According to F.B., this happened twice. Other relevant testimony is as follows:
Q. [Prosecutor]: ... did he attempt to stick [his penis] in your butt hole ...
A. [F.B.]: No.
Q. [Prosecutor]: What do you mean no? How close did he get to it?
A. [F.B.]: He touched it.
Q. [Prosecutor]: Did he put it inside?
A. [F.B.]: No.
Q. [Prosecutor]: Did he hurt you when he did that?

*459 A. [F.B.]: No.
Q. [Prosecutor]: Did he do that on both occasions or just one occasion?
A. [F.B.]: Just one occasion.
F.B. also testified that appellant touched it [my butt hole with his penis]" on one occasion. "It [his penis] did [touch my butt hole]." The boy stated that when appellant put his penis up against his butt it would be hard. When asked several times if, what he felt could have been appellant's finger, F.B. said he was not sure.
Although recognizing that F.B.'s testimony on the essential sexual union element of capital sexual battery was direct evidence, appellant nonetheless characterizes that evidence as something less than unequivocal and argues that we should apply the circumstantial evidence standard because such evidence could be seen as establishing a reasonable hypothesis of innocence. Citing to McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977), Davis v. State, 90 So.2d 629 (Fla. 1956), Mayo v. State, 71 So.2d 899 (Fla. 1954), and Head v. State, 62 So.2d 41 (Fla. 1952), appellant urges that F.B.'s evidence is consistent with the reasonable hypothesis of innocence that some object other than appellant's penis came in contact with F.B. He contends that such evidence may have been sufficient to sustain a conviction for some lesser included offense but was insufficient to prove capital sexual battery. Thus, he argues that his motion for judgment of acquittal on capital sexual battery on F.B. should have been granted. We disagree.
Appellant cites no authority and we could find none to support his contention that his conviction for sexual battery committed on F.B. should be treated by this court as one resting solely on circumstantial evidence. Gay's conviction on this count was supported by the testimony of F.B. At trial, no objection was made to the competency of the witness. Yet, on appeal, appellant suggests that the equivocal nature of F.B.'s testimony raises questions about his competency to testify. Quite apart from the fact that no competency issue was raised below and thus was not preserved for appellate review, we believe the inquiry here is whether the testimony of F.B. was so ambiguous, so unreliable or so incredible that no reasonable juror could find appellant guilty beyond a reasonable doubt.
Bearing in mind that union of appellant's penis with F.B.'s anal opening is an essential element of the charged offense, it is, of course, possible that relevant testimony given by the child is so untrustworthy as to be legally insufficient to support that charge. Although a careful review of the record before us suggests that the prosecutor had some difficulty in focusing the little boy's attention on the issue at hand, we are of the view that the following testimony was sufficient to submit the union element of capital sexual battery to the jury and make the denial of appellant's judgment of acquittal proper.
Q. When he stuck [his penis] in your butt crack, did he attempt to stick it in your butt hole? Do you recall telling me that?
A. No.
Q. What do you mean no?
* * * * * *
Q. Did he put it inside?
A. No.
* * * * * *
Q. It's very important to the people ... on the jury to know whether or not John Gay's penis ever touched your butt hole.
A. No.
Q. It did not on any occasion?
A. The first one.
Q. On the first occasion. What about the second occasion?
A. No.
Q. Well you need to explain that to us now. Did his penis touch your butt hole or didn't it?
A. It did.
In sum, we find that the jury could draw a reasonable inference of guilt from the above quoted portion of F.B.'s testimony taken in conjunction with his other testimony. Thus, the trial court did not err in denying appellant's motion for judgment of *460 acquittal as to the capital sexual battery count.

THE SUPPRESSION ISSUE
Shortly after J.Y. and B.B. and their parent(s) reported the events of October 1, 1989 to UFW police Lt. Thomas Johnson, Johnson, accompanied by Gulf Breeze police Sgt. Randall and Investigator Hawthorne, went to appellant's place of employment with a warrant for his arrest and the search of his automobile. Upon their arrival at the Video Place, the officers observed appellant standing behind the counter where store clerks were normally found. They asked him to step to the rear of the store where they could talk but Gay said it would be better if they all went outside. After escorting Gay outside, the officers advised him of his constitutional rights and the warrants they had obtained. When asked about the whereabouts of his camera case, Gay said he didn't know where it was. He informed the officers that he had taken photographs of the two boys but that none of them were improper. He took the officers back inside the store where he produced an envelope containing some innocuous photographs of J.Y. and B.B.. At that point, appellant was arrested, placed in Lt. Johnson's car and the two men left the premises.
Because of past dealings with appellant,[1] Investigator Hawthorne knew that Gay was rarely far away from his camera case. After Lt. Johnson left with appellant, Hawthorne and Sgt. Randall went back into the store to look for the case. What Hawthorne thought to be appellant's initialed camera case was found on the floor behind the counter within two or three feet from where Gay had been standing when first approached by the officers. At this point, roughly five minutes had elapsed since Sgt. Johnson had left the scene with appellant. Opening the camera case, Investigator Hawthorne found photographs of J.Y. and B.B. which showed their genitalia. Lt. Johnson was then contacted by radio and shortly thereafter returned to the store.
Pre-trial, appellant moved to suppress the incriminating photographs of J.Y. and B.B., urging that the officers did not have a search warrant for the store or appellant's consent to open the camera case. At a hearing on appellant's suppression motion, Hawthorne testified that the camera case was seized in an area open to all employees. In denying appellant's motion, the trial court found that the camera case was seized incident to a lawful arrest and further that the search was reasonable within the time frame in which it was conducted.
On appeal, appellant contends that the search of his camera case was not incident to his arrest because he was not arrested until he was outside his employment premises and further that the camera case was not within his immediate control when it was found because he had been removed from the locale. Thus, he argues that since the case was found behind a customer service counter to which employees had access but the public did not, he had a reasonable expectation of privacy in his place of employment. See Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Villano v. United States, 310 F.2d 680 (10th Cir.1962).
The state maintains that searches comparable to the one at issue here have been upheld before. See Savoie v. State, 422 So.2d 308, 310 (Fla. 1982) (suspect's attache case searched at scene of arrest after suspect had been handcuffed); Davis v. Robbs, 794 F.2d 1129 (6th Cir.1986) (suspect's living room searched to obtain rifle after suspect had been handcuffed and placed in squad car); United States v. Fleming, 677 F.2d 602 (7th Cir.1982) (suspect's bag searched five minutes after suspect had been handcuffed and taken from the house to the street). The state argues further that even if admission of the photographs of J.Y. and B.B. was error, such error was harmless inasmuch as the appellant conceded during opening statement to the jury as well as in his final argument that he was guilty of several counts of lewd and lascivious *461 acts against children, although without specifically naming J.Y. and B.B.
It has been long established that when the police make a lawful arrest they may then conduct a search of containers and other personal effects of the arrestee incident to the arrest. The search may extend to areas "within the immediate control" of the arrestee, construing that phrase to mean the area from which one might gain possession of a weapon or destructible evidence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Of course, the scope of the search incident to arrest theory is not without bounds, for where the search of an arrestee's footlocker was conducted more than an hour after it had been secured and long after the arrestee was securely in custody, the search could not be justified as incident to the arrest or by any other exigency. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The Chadwick court further stated that searches incident to a lawful custodial arrest may be conducted "whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence." Id. at 14, 97 S.Ct. at 2485.
Now, moving toward a factual scenario more analogous to the case at hand, the United States Supreme Court upheld the warrantless search of a jacket seized from within the defendant's automobile as incident to his arrest, notwithstanding that the defendant was securely in custody at the time of the search. The court held that the jacket was "within the arrestee's immediate control" within the meaning of the Chimel case. New York v. Belton, 453 U.S. 454, 462, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Moreover, the scope and authority of Belton is not limited to the search of the contents of automobiles. Stone v. State, 547 So.2d 158 (Fla. 4th DCA 1989) (en banc). The Belton court also rejected the theory that the actual ability of the arrestee to reach a weapon or destroy evidence is the determinative consideration in deciding whether a search incident to an arrest is valid. Savoie v. State, supra, at p. 313. In Savoie, the supreme court upheld as incident to arrest the search of an attache case formerly in the possession of the arrestee despite the fact that the arrestee had already been handcuffed and the attache case was securely in the possession of the arresting officers.
Of the many fact-specific Fourth Amendment cases in this country's jurisprudence, one which seems particularly instructive in this case is Stone v. State, supra. In Stone, officers approached the defendant who was seated on a bus, and engaged in conversation. The officers sought consent to search but their request was refused. The defendant subsequently admitted to having marijuana in one of his two bags situated in an overhead luggage rack. At the officers' request, the defendant left the bus and the officer removed the bags, placing them next to the bus. After a specially trained dog alerted to the bags, the defendant was placed under arrest and the bags were immediately searched. Relying on Chadwick, supra, the defendant contended that a warrant was required to search the bags. Among his arguments, the defendant contended, as in the present case, that the bags were not within his immediate control. One of the pronouncements of the Stone court seems applicable to the present case:
It should not matter whether the bags were immediately above the defendant's head rather than under the seat ahead of him, or whether the briefcase in Savoie's possession was carried in his hand or was being carried by a porter in a cart alongside of him, as long as they were within the area recognized in Chimel. Nor is there anything in either Savoie or Belton to indicate that the motive of the officer should determine whether a search passes muster. Rather, a search that is not remote in time or place should be deemed to be a reasonable intrusion if the object of the search had been within the defendant's immediate area of control just prior to his detention and the seizure.

Stone v. State, 547 So.2d at 161-162.
In the matter at bar, the camera case was within appellant's immediate control *462 when the officers first approached him with an arrest warrant. After escorting appellant outside, appellant was officially placed under arrest. While under arrest, appellant, himself, led officers back inside to produce some photographs of the children. At this point, the camera case was again within the immediate control of the appellant. Within five minutes after appellant was removed from the scene, officers discovered the camera case in an area in which their presence was not prohibited. Moreover, in assessing the reasonableness of the search, it must be noted that the camera case bore appellant's initials and, based upon what the children had told Lt. Johnson, appellant had taken nude photographs of them. Because the search was conducted immediately after the arrest, because the camera case was recovered from the area within the immediate control of appellant just prior to and during the arrest, and in light of the exigency of the possibility of lost or destroyed evidence (even if not in the hands of appellant), we believe the trial court was correct in finding the search of appellant's camera case to be reasonable.
Even if we were to conclude that the denial of the motion to suppress the photographs was error, it would amount to no more than harmless error. With respect to charges of possession of photographs which depict sexual conduct by a child (sec. 827.071(5), Florida Statutes (1989)) all such charges were nolle prossed. Insofar as admission of the photographs was relevant to the prosecution of charges of lewd, lascivious or indecent assault upon a child (sec. 800.04, Florida Statutes (1989)), appellant's convictions are also supported by testimony of his young victims. Moreover, it clearly appears to us that a part of defense counsel's trial strategy was to admit some of the lewd and lascivious offenses. We therefore conclude that admission of the photographs in issue, if error, was harmless. State v. Diguilio, 491 So.2d 1129 (Fla. 1986).

THE PEDOPHILE PROFILE ISSUE
After the jury was sworn below but before any testimony was presented, appellant's trial counsel conceded in his opening statement that "John Gay does have a problem with regard to young children" and that "he did, in fact, photograph them." He went on to admit that the "evidence is going to be that John did, in fact, touch these children wrong and he is guilty of some of those counts." Counsel continued:
The testimony of the experts that you hear, obviously we don't know what they are going to say at this point in time. I will be hearing it at the same time that you do, but I would suggest to you that you will find that John does, in fact, fit that category of persons who relates to, associates with and for all practical purposes is a 9-or-10-year-old child who takes photographs, and that's where he gets his gratification from.
One of the experts to which counsel alluded, Dr. Michael DeMaria, a psychologist, was qualified, without objection, as an expert dealing with sexually abused children. He testified concerning that to which a psychologist looks to determine whether a child is being truthful about allegations of sexual misconduct. With no objection from the defense, Dr. DeMaria testified at length about two types of pedophiles, regressive and fixated, and about the behavior of each. Both defense counsel and the prosecutor made extensive use of this testimony in closing arguments by linking appellant to the profile of the fixated pedophile testified to by Dr. DeMaria.
Notwithstanding that appellant's trial counsel did not object to the pedophile profile testimony when it was offered, or at any other time below, appellate counsel, citing to this court's opinions in Flanagan v. State, 586 So.2d 1085 (Fla. 1st DCA 1991) (en banc), on reh'g questions certified, 16 F.L.W. D2693 (Fla. 1st DCA Oct. 14, 1991) and Phillips v. State, 589 So.2d 1360 (Fla. 1st DCA 1991), on reh'g questions certified, 589 So.2d at 1362-63, which disapproved of pedophile profile testimony as substantive evidence of a defendant's guilt, argues that the admission of such testimony constituted fundamental error in that it *463 deprived the appellant of a fair trial because it went to foundation of the case. See Clark v. State, 363 So.2d 331, 333 (Fla. 1978), overruled on other grounds, State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Consequently, argues appellant, because the error is fundamental, no contemporaneous objection was necessary when it was introduced. See Lucas v. State, 568 So.2d 18, 21 (Fla. 1990).
In the case at hand, as in Phillips, the defendant was unmistakably linked to the crimes charged by pedophile profile evidence. In Phillips, such linkage was held to be reversible error where the objection at trial had preserved the question for review. In the case at bar, however, both parties concede that no such objection was made below. On the facts at hand, it is difficult to imagine that the admission of such testimony, even if error, amounted to fundamental error. At trial, Dr. DeMaria gave testimony of the pedophile profile, but did not link the profile to appellant. He also gave some insight into the interpretation of child testimony.
In closing argument, the defense counsel addressed the jury first. He conceded that appellant was guilty of five of ten lewd and lascivious charges but did not at this time link appellant to the pedophile profile. In the state's closing argument, the prosecutor unmistakably linked appellant to the pedophile profile without objection. When defense counsel addressed the jury in rebuttal, he linked the pedophile profile to the defendant.
In assessing whether the testimony in question deprived appellant of a fair trial or adversely affected a fair trial on the merits, the following points seem to us most significant:
1. Appellant's convictions were also supported by the testimony of his child victims.
2. Defense counsel conceded guilt on 5 lewd and lascivious charges.
3. The jury convicted appellant on only 7 of the 10 lewd and lascivious charges or, stated differently, on only 2 of the 5 contested lewd and lascivious charges, indicating that the jury was able to sort through the facts of each charge and was not unduly swayed by the testimony in question.
4. Defense counsel failed to object to the state's linkage of the profile with appellant and, indeed, appeared to make every effort himself to link the defendant with such testimony.
Even if the defense had objected to linkage of appellant and the profile testimony during the course of the trial, it appears that appellant's claim on appeal would be unable to survive even the less stringent harmful error analysis to which such testimony was subjected in both Flanagan and Phillips.
The record reflects that from the outset of the proceedings below, appellant's defense was primarily predicated on portraying appellant as "sick", which sickness led him to commit a number of the offenses with which he was charged. Our reading of the record suggests that appellant's trial strategy of admitting the commission of some of the less serious crimes charged while denying the commission of more serious offenses was purposefully adopted as the best way to defend against the type and number of pending charges. Crucial to such a defense as appellant offered below was authoritative testimony as to the "sickness" with which his trial counsel claimed he was afflicted. Dr. DeMaria provided such testimony.
Accordingly, while we adhere to our previous rulings that pedophile profile testimony is not admissible as substantive evidence of a defendant's guilt, under the facts of this case we do not find that the admission of such testimony below amounted to reversible, much less fundamental, error. Thus, we reject appellant's contentions to the contrary.
AFFIRMED.
BOOTH and SHIVERS, JJ., concur.
NOTES
[1] Investigator Hawthorne testified that he had personal knowledge that appellant had on occasion provided certain photographic services for the police.