[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 24, 2012
JOHN LEY
CLERK

No. 10-15863

_____

D.C. Docket No. 0:10-cr-60079-AJ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CARL SCHNEIDER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 24, 2012)

Before DUBINA, Chief Judge, FAY, and KLEINFELD,[*] Circuit Judges.

KLEINFELD, Circuit Judge:

---

[*] The Honorable Andrew J. Kleinfeld, United States Circuit Judge for the Ninth Circuit, sitting by designation.

We address whether a Florida conviction for false imprisonment is a "violent felony" under the Armed Career Criminal Act.

**Facts and Procedural History**

Carl Schneider sold fifty oxycodone pills to a confidential informant and an undercover police officer on July 9, 2009. He was under surveillance during the sale and was quickly apprehended after it as he drove away. Detectives found a .32 caliber handgun and a 9mm semiautomatic pistol in his pickup truck, as well as the actual currency used in the drug sale.

Schneider pleaded guilty both to possession with intent to distribute oxycodone under 21 U.S.C. § 841(a)(1), and to being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(e). Those convictions are not at issue in this appeal.

What he appeals is the sentence enhancement for being an armed career criminal under 18 U.S.C. § 924(e). Before sentencing, defense counsel filed a written objection to the armed career criminal enhancement, on the ground that the Florida false imprisonment statute did not require violence as an element of that crime. The probation officer advised the court that without the enhancement, Schneider's guideline range would be 70 to 87 months, but with it, he was subject to a 180-month statutory mandatory minimum. Schneider was 71 years old at

2

sentencing, and the crimes for which he was subject to the sentencing enhancement had all occurred more than 25 years earlier. He had been out of prison for ten years.

With respect to the false imprisonment conviction, the presentence report said:

> On or about June 20, 1980, officers were advised via radio of an abduction that occurred in the City of Deerfield Beach, Florida. The radio message advised to be on the lookout for two black males who had been abducted by two white males and were possibly headed toward the Days Inn motel, located at 1250 West Hillsboro Boulevard. While in that area, an officer observed a passenger truck with two white males and three black males. One white male was seated in the bed of the truck facing three black males, who were seated with their backs against the back window of the vehicle. The other white male was seated in the driver's seat, and operating the vehicle. The officer followed the vehicle to the front of the Days Inn, where the subjects parked and exited the vehicle. The group then walked toward the front desk of the motel. One black male separated from the group and ran to the officer and stated that the two white males had pulled a gun on him and taken him from his home. The officer then verified the name of the man. When additional officers arrived, the subjects were all placed under arrest and searched. On the defendant's person, officers found five rounds of shotgun ammunition in his left shirt pocket. The kidnapping occurred at 347 NW 6 Court, in Deerfield Beach, at approximately 3:00 a.m. All three victims stated that the defendant held them with a gun against their will.

The presentence report said that adjudication had been withheld on the case, and that the defendant had received only probation initially. His probation was

subsequently revoked and the defendant was sentenced to five years of incarceration, evidently after his apprehension on the unrelated robbery, burglary and kidnapping charge two years later.

Because the factual account in the presentence report did not set out its documentary basis (and perhaps because the initial lenient sentence seemed out of kilter with the damning facts), the district judge directed that such documents as could be obtained on the crime be produced at a subsequent sentencing hearing. He specifically requested the charging document and the document of conviction, if they could be obtained, to see precisely which sort of false imprisonment Schneider had committed.

At the second sentencing hearing, the probation officer had supplied the court with the documents she had obtained. A clerk's docket entry of January 15, 1981 showed the kidnapping charge stricken and violation of probation as the charge. It also noted that Schneider had pleaded guilty to the lesser included offense of false imprisonment on October 20, 1980. The 1981 entry said that probation was revoked, and that Schneider was sentenced to "external probation for 3 years." In 1982 the docket showed another probation violation, this time with a sentence of "5 years state prison with credit for time served of 56 days." The entry does not say what the violation of probation was, but the timing

4

suggests that it may have been the 1982 armed robbery and kidnapping.  His judgment says he pleaded nolo contendere to "the lesser included offense of false imprisonment," Fla. Stat. 787.02(1)(a), a third degree felony.  Another document evidently submitted by the prosecutor to the court in 1980 says, "The State hereby announces a No Information" on the charges of kidnapping and of possession of a firearm in commission of a felony.  Though it says that the State was in the process of filing an information charging kidnapping, evidently that did not occur.

The presentence report account was evidently based on a complaint affidavit that had preceded the charges and nolo plea.  The complaint affidavit is by a police officer.[1]

---

[1]    The officer's affidavit states:

The officer while on duty in the City of Deerfield Beach was advised via radio of an abduction which occurred in the City of Deerfield Beach.  The radio message advised to be on the lookout for two black males who had been abducted by two white males and were possibly headed to the area of Day's Inn, located at 1250 W. Hillsboro.  While in that area this officer observed a brown GMC Caballero type truck containing two white males and three black males.  One white male was seated in the bed of the truck facing the three black males who were seated with their backs against the back window of the vehicle.  The other white male was seated in the driver's seat and was operating the vehicle.  This officer followed the vehicle to the front of Day's Inn where the subjects parked the vehicle and exited same.  They then walked toward the front desk of the motel.  One black male separated from the group and ran to this officer and advised that the two white males had pulled a gun on him and taken him from his home.  This officer asked the subject if his name was Garner (the abductionvictims [sic] name) to which he replied he was the same.  This officer then requested a backup.  Officers Tipton, Estes and Rhodes arrived on the scene.  Subjects were then placed under arrest, searched and handcuffed.  Subject Carl Schneider was found to . . . [line(s) missing] . . . stated that the defendant was holding them with a gun against their

The judge said that the probation officer had not been able to find a change of plea colloquy or transcript with a factual proffer, so unless the parties could find more, he did not have sufficient evidence cognizable for sentencing purposes of the circumstances of the 1980 crime. The prosecutor responded, "I would agree that there's nothing there to rely on." The judge said that he could not rely on the complaint affidavit, because he could not ascertain from the record what facts among those alleged Schneider might have admitted or pleaded guilty to, and he might under Florida law have pleaded nolo contendere to false imprisonment that did not constitute kidnapping or armed kidnapping. He asked if counsel took a different view, but the prosecutor said "I agree with that assessment, your Honor." So, of course, did defense counsel.

The court then heard argument, and the prosecutor argued that the Florida crime of false imprisonment, even under its "secretly" provision,[2] categorically qualified as a violent felony under the Armed Career Criminal Act. The defense argued the contrary. The judge asked what sentence counsel would recommend,

will.

Sworn statements were obtained from the victims.

[2] "The term 'false imprisonment' means forcibly, by threat, or **secretly** confining, abducting, imprisoning, or restraining another person without lawful authority and against her or his will." Fla. Stat. § 787.02(1)(a) (emphasis added).

6

assuming that the fifteen-year mandatory minimum under the Armed Career Criminal Act did not apply. The prosecutor recommended a Guidelines sentence of 70 to 87 months and suggested that, even though the kidnapping or false imprisonment was thirty years ago, it should be considered in imposing a guidelines sentence. Because of recent changes in the case law, the judge scheduled a third sentencing hearing so that the issue could be further studied and addressed.

At the final sentencing hearing, the judge carefully analyzed the case law to date and decided that the Armed Career Criminal Act did indeed apply, requiring a mandatory minimum sentence of fifteen years. He concluded that, in the ordinary case, Florida false imprisonment carries a serious potential risk of physical injury to another, and that the crime is similar in kind to the crimes enumerated in the Act. The judge said that "if the Armed Career Criminal Act were not applicable … I would not impose a sentence of 15 years in this case on Mr. Schneider." He noted that Schneider's objection to applicability of the Act was preserved.

Schneider appeals his sentence.

**Analysis**

The primary question in this case is whether, as a categorical matter, false

7

imprisonment under the Florida statute is a violent felony for purposes of the Armed Career Criminal Act. Before we reach that question, we must resolve a question the government raises, which is whether Schneider should be treated as having admitted the facts alleged in the presentence report. Were that resolved as the government argues, we would have no need to reach the primary question.

A. Waiver

The government argues that because Schneider did not specifically dispute the facts alleged in the presentence report, they must be taken as true. The facts would establish that Schneider was one of two perpetrators who abducted three men and held and transported them at gunpoint. The premise of this argument is incorrect. Schneider did not admit those facts.

True, Schneider's objection to the presentence report, though specifically designating the factual paragraph, focuses on the legal argument rather than setting out any factual dispute. But Schneider did without question object in writing prior to the sentencing hearing both to the factual allegations paragraph and also to the paragraph adding the "armed career criminal" enhancement. The argument is terse, merely pointing out that some nonviolent conduct is included within the Florida false imprisonment statute.

The oral argument at the sentencing hearing establishes that the prosecution

8

as well as the defense assumed as the premise of their arguments that there was insufficient documentation to support the factual allegations about holding men at gunpoint. The judge expressed doubt that the police report upon which the presentence report relied was cognizable under Shepard v. United States.[3] The prosecutor expressly agreed. They were right. Shepard "permitted sentencing courts to determine the nature of a prior conviction based only on the list of judicial records in Shepard or a fact to which the defendant assented (the 'Shepard-approved sources') and precluded the sentencing court's use of police reports to establish the nature of a prior conviction for purposes of the § 924(e)(1) enhancement."[4] The district court properly looked for a change of plea colloquy, language in an indictment or information to which Schneider had pleaded guilty, or other sufficient basis for determining whether he had admitted the facts originally alleged, and found none. The court gave two continuances to look for documents cognizable under Shepard, but none were found. It is plain from the record that counsel on both sides assumed, correctly, that the modified categorical approach would not be applied to facts ascertained only from a police report or complaint affidavit. Instead, both parties and the court focused on the more

---

[3]     Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005).

[4]     United States v. Sneed, 600 F.3d 1326, 1332 (11th Cir. 2010) (citing Shepard, 544 U.S. at 26, 125 S. Ct. at 1263).

9

serious argument about whether the Florida false imprisonment was categorically a "violent felony."

The government asks us to read Schneider's terse written objection as though it objected only to the legal conclusion, but that would not be a fair reading. The prosecutor, defense counsel, and the judge all agreed that the police report was an insufficient basis on which to establish the facts that the government now wants to treat as admitted. Schneider's express written objection to the factual paragraph of the presentence report, as well as the paragraph adjusting the Guidelines level based on those facts and the oral arguments at the sentencing hearings, sufficed to object with sufficient "specificity and clarity"[5] to use of those factual allegations to determine the nature of Schneider's Florida false imprisonment conviction.

B. Categorical Analysis

The Florida crime to which Schneider pleaded nolo contendere, false imprisonment, "means forcibly, by threat, or secretly confining, abducting, imprisoning, or restraining another person without lawful authority and against her or his will."[6] It is a third degree felony punishable by up to five years of

---

[5]   United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006) ("[C]hallenges to the facts contained in the PSI must be asserted with specificity and clarity.").

[6]   Fla. Stat. § 787.02(1)(a).

10

imprisonment.[7]  False imprisonment is a lesser included offense of kidnapping,[8]

which is a first degree felony punishable by life imprisonment.[9]  Kidnapping

differs in that it requires an additional element of intent to hold for ransom, to

facilitate another felony, to inflict bodily harm or terror, or to interfere with a

governmental function.[10]  Schneider pleaded nolo contendere to and was sentenced

to probation for false imprisonment, not kidnapping.

The Armed Career Criminal Act imposes a mandatory minimum sentence of

fifteen years for certain violations of what is colloquially called "felon in

possession."  Generally, possession of a firearm by someone previously convicted

of a felony, or subject to certain other disqualifiers, is itself a felony.[11]  If the felon

---

[7]     Fla. Stat. §§ 787.02(2), 775.082(3)(d).

[8]     State v. Sanborn, 533 So. 2d 1169, 1170 (Fla. 1988).

[9]     Fla. Stat. §§ 787.01(2), 775.082(3)(b).

[10]    Fla. Stat. § 787.01(1)(a) reads in full:

        (1)(a) The term "kidnapping" means forcibly, by threat, or secretly confining,
        abducting, imprisoning, or restraining another person without lawful authority and
        against her or his will, with intent to:

                1.  Hold for ransom or reward or as a shield or hostage.
                2.  Commit or facilitate commission of any felony.
                3.  Inflict bodily harm upon or to terrorize the victim or another person.
                4.  Interfere with the performance of any governmental or political
                function.

[11]    18 U.S.C. § 922(g)(1).

in possession has three previous convictions for violent felonies or serious drug offenses, then a sentence of at least fifteen years must be imposed under the Armed Career Criminal Act.[12]  Schneider does not contest that two of his previous convictions are predicate offenses under the Act, but does contest whether Florida false imprisonment is a "violent felony" for purposes of 18 U.S.C. § 924(e)(2)(B).

The statutory definition of "violent felony" has given rise to a series of decisions from which it is not easy to derive a usable rule.  United States v. Chitwood, addressing the four decisions in four years in which the Supreme Court has addressed the question, notes that "the ever shifting sands of the residual clause shifted again"[13] in the latest iteration, Sykes v. United States.[14]

Here are the words of the statute:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
      (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
      (ii) is burglary, arson, or extortion, involves use of explosives,

---

[12]     18 U.S.C. § 924(e).

[13]     United States v. Chitwood, 676 F.3d 971, 978 (11th Cir. 2012).

[14]     Sykes v. United States, — U.S. —, 131 S. Ct. 2267, 180 L. Ed. 2d 60 (2011).

12

**or otherwise involves conduct that presents a serious potential risk of physical injury to another**[.][15]

The word "or" between subsections (i) and (ii) means that coverage by either subsection suffices. The government does not argue that, under the categorical approach (looking only at the statute, not at the particularized facts of a defendant's prior offense), false imprisonment has as an element "the use, attempted use, or threatened use of physical force." All we need decide, therefore, is whether false imprisonment is "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." The residual clause, "otherwise involves conduct that presents a serious potential risk of physical injury to another," is all that may apply to Florida false imprisonment.[16]

Begay v. United States held, in the context of driving under the influence,

---

[15] 18 U.S.C. § 924(e)(1)(B) (emphasis added).

[16] Schneider directs our attention to United States v. Rosales-Bruno, 676 F.3d 1017 (11th Cir. 2012), which holds that under the somewhat similar Guideline provision at U.S.S.G. § 2L1.2(b)(1)(A)(ii), Florida false imprisonment is not a "crime of violence." The case is not on point, because the official comment to the guideline, defining "crime of violence," lacks the residual clause that the statute at issue here includes. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). See also United States v. Miranda-Ortegon, 670 F.3d 661, 664 n.12 (5th Cir. 2012) (noting that Tenth Circuit authority holding that Oklahoma assault and battery is a "violent felony" under the ACCA residual clause was not persuasive authority for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii), because the Guideline commentary includes no equivalent residual clause).

that "serious potential risk of injury to another" was necessary but not sufficient to satisfy the residual clause, because the enumerated crimes implied that the residual clause applied only to "<u>similar</u> crimes, rather than <u>every</u> crime that 'presents a serious potential risk of physical injury to another.'"[17]  Drunk driving statutes differ from the listed crimes in that they do not typically involve "purposeful, violent, and aggressive conduct," and "are, or are most nearly comparable to, crimes that impose strict liability."[18]

Our subsequent decision in <u>United States v. Harrison</u> holds that, to decide whether a crime falls within the residual clause, we must determine, first, the relevant category of crime by "looking to how the crime is ordinarily committed"; second, whether the crime poses a "serious potential risk of physical injury" similar in degree to the risks posed by the enumerated crimes; and third, whether the crime is similar in kind to the enumerated crimes.[19]  Statistical evidence "plays a role,"[20] but as Justice Scalia has pointed out, ordinarily neither party presents any

[17]     <u>Begay v. United States</u>, 553 U.S. 137, 142, 128 S. Ct. 1581, 1585, 170 L. Ed. 2d 490 (2008) (emphasis in original) (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

[18]     <u>Id.</u> at 145, 128 S. Ct. at 1586.

[19]     <u>United States v. Harrison</u>, 558 F.3d 1280, 1287 (11th Cir. 2009).

[20]     <u>Id.</u> at 1289.

statistical evidence unless and until the case is before the Supreme Court.[21]  No

statistical evidence was presented in the case at bar.

The Supreme Court decided Sykes v. United States after Harrison.  Sykes

holds that vehicular flight from a law enforcement officer is a violent felony for

purposes of the Armed Career Criminal Act.[22]  The Court concluded that Begay's

"similarity in kind" limitation to "purposeful, violent, and aggressive" crimes did

not apply, and considered only whether the crime was similar in degree of risk to

the crimes enumerated in 18 U.S.C. § 924(e)(2)(B)(ii).[23]  Sykes did not overrule

Begay, but distinguished it as involving a crime "akin to strict liability,

negligence, and recklessness crimes."[24]  The Sykes Court noted, "[i]n many cases

the purposeful, violent, and aggressive inquiry will be redundant with the inquiry

into risk."[25]  Sykes expanded upon statistics of harm from flight from law

---

[21]  Sykes v. United States, — U.S. —, 131 S. Ct. 2267, 2286, 180 L. Ed. 2d 60 (2011) (Scalia, J., dissenting) ("Most of the statistics on which the Court relies today come from government-funded studies, and did not make an appearance in this litigation until the Government's merits briefs to this Court.").

[22]  Sykes, 131 S. Ct. at 2277.

[23]  Id. at 2275-76.

[24]  Id. at 2276.

[25]  Id.

15

enforcement officers, but noted that "statistics are not dispositive."[26]

Begay and Sykes have to be reconciled, because Sykes does not purport to overrule Begay. United States v. Chitwood,[27] filed subsequent to oral argument in this case, performed this challenging task. Chitwood adopted the reconciliation favored by most of our sister circuits to have addressed the issue, and concluded that Begay's "purposeful, violent, and aggressive" inquiry is limited to "strict liability, negligence, and recklessness crimes."[28] This is the distinction the Supreme Court itself drew in Sykes, between Sykes and Begay.[29] Offenses that are not "strict liability, negligence, or recklessness crimes" fall within the residual clause "if they categorically pose a serious risk of physical injury that is similar to the risk posed by one of the enumerated crimes."[30] Chitwood holds that Georgia false imprisonment (which lacks the "secretly" provision in Florida's statute)[31] creates a risk of physical injury similar to burglary of a dwelling.[32] Chitwood

---

[26]    Id. at 2274-75.

[27]    United States v. Chitwood, 676 F.3d 971 (11th Cir. 2012).

[28]    Id. at 978-79.

[29]    Id. at 979.

[30]    Id.

[31]    See Ga. Code Ann. § 16-5-41.

[32]    Chitwood, 676 F.3d at 979-80.

recognized that the risk of violent confrontation between the perpetrator and the false imprisonment victim was similar to that in burglary of a dwelling, and noted that "the offender's awareness that such a violent confrontation is possible and could be necessary indicates that he may be prepared to use violence if necessary to complete the crime or to escape."[33]  Rejecting appellant's argument that the government was obligated to provide statistics, Chitwood held that statistical evidence is not required, and in its absence, the court will "rely on our own commonsense analysis."[34]

Though the Georgia statute in Chitwood lacks the "secretly" element of the Florida statute before us,[35] we reach the same conclusion for the Florida statute. One Florida case defines "secretly" in the false imprisonment and kidnapping contexts.  In Robinson v. State, the defendant, a college student, picked up a female college student who had gotten her car stuck on some railroad tracks by offering to help her.[36]  But instead of helping, he allegedly drove her a short

---

[33]     Id. at 980.

[34]     Id. at 981 (quoting United States v. Alexander, 609 F.3d 1250, 1257 (11th Cir. 2010)).

[35]     "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."  Ga. Code Ann. § 16-5-41(a).

[36]     Robinson v. State, 462 So. 2d 471, 473 (Fla. 1st DCA 1984).

distance to a dark area and raped her.[37]  The court held that during the period prior to rape, when he was allegedly driving her to the nearby dark location, a jury could find that he "secretly" kidnapped her.[38]  This appears likely to be a typical scenario for false imprisonment accomplished "secretly."  Robinson continued, "[t]he term 'secretly' means that the abduction or confinement is intended by the defendant to isolate or insulate the intended victim from meaningful contact or communication with the public."[39]

In the Robinson context, "secretly" also means that the victim does not at the time know that he or she is being confined or abducted.  Before Robinson allegedly stopped the car and raped the victim, he would know he was abducting her, but she would be unaware that she was being abducted.  Florida courts have likewise found secret kidnappings where a child was led to an isolated area to isolate her from contact in order to molest her;[40] where a child was driven to a location to isolate her from contact, after luring her into the car by offering her a

---

[37]     Id.

[38]     Id. at 476.

[39]     Id.

[40]     Bishop v. State, 46 So. 3d 75 (Fla. 5th DCA 2010) (following Robinson v. State, 462 So. 2d 471 (Fla. 1st DCA 1984)).

18

ride to her mother's house;[41] and where young boys were lured into a car, purportedly to take them to a swimming pool, but actually to isolate them from contact in a wooded area in order to molest them.[42] These were kidnapping rather than false imprisonment cases because of the purpose of the abductions, to commit sexual felonies. Although an additional intention is required for kidnapping, the "secretly" element is the same as for false imprisonment.[43] The gist of falsely imprisoning or kidnapping "secretly" is that the victim is isolated from contact with others by a ruse, so that the victim is not aware of the abduction.

We think the district judge had it right in characterizing Florida false imprisonment as being comparable to burglary with respect to the degree and kind of risk produced. The Seventh Circuit, in United States v. Billups, reasoned that the risk created by false imprisonment, even if accomplished by deceit rather than by force, arises from the possibility that the victim might try to resist or escape.[44] We agree. In the automobile example, the victim is reasonably likely to realize at

---

[41]     Corner v. State, 868 So. 2d 553 (Fla. 3d DCA 2004).

[42]     Gay v. State, 607 So. 2d 454 (Fla. 1st DCA 1992).

[43]     See State v. Sanborn, 533 So. 2d 1169, 1170 (Fla. 1988) (holding that false imprisonment is a necessarily lesser included offense of kidnapping).

[44]     United States v. Billups, 536 F.3d 574, 581 (7th Cir. 2008) ("Again, the potential for violent confrontation remains substantial, despite the victim's initial consent, because the victim may discover the ruse (or his own mistake) and resist.").

some point that he or she had been secretly abducted, and to suffer injury from trying to get out of the car while it is moving or in traffic, from hazards after escaping, or from the perpetrator using force to prevent the victim's escape.

We know from <u>Sykes</u> that the injury need not be from force applied by the perpetrator, because in that case the Court held that the risk of injury from the police car chasing the fleeing suspect satisfied the "serious potential risk of physical injury to another" phrase in the statute.[45] As the <u>Sykes</u> Court noted, "Flight from a law enforcement officer invites, even demands, pursuit. As that pursuit continues, the risk of an accident accumulates."[46] The burglar hopes that no one will be home and there will be no confrontation, but burglars are sometimes mistaken, and violent confrontations sometimes ensue. Likewise a defendant secretly confining or abducting someone may hope that the victim goes along peacefully, or discovers the ruse too late to do anything about it. But the victim may discover the ruse and injure himself or get injured by the perpetrator during an escape attempt.

Schneider argues that, under <u>Chambers v. United States</u>[47] and <u>Johnson v.</u>

---

[45]    <u>Sykes v. United States</u>, 131 S. Ct. 2267, 2274 (2011).

[46]    <u>Id.</u>

[47]    <u>Chambers v. United States</u>, 555 U.S. 122, 129 S. Ct. 687, 172 L. Ed. 2d 484 (2009) (holding that Illinois failure to report to a probation officer is not a "violent felony" under the

United States,[48] we may only consider the perpetrator's conduct in causing injury, not his victim's reaction, in evaluating whether a crime presents a "serious potential risk of physical injury to another." We disagree. The predicate crime in Chambers was failure to report for scheduled weekend confinement. The Court held that the residual clause did not apply, because the conduct was inaction, and there was no reason to think that whatever the defendant might have been doing at the time posed danger to anybody, and both intuition and statistics cut against an inference of dangerousness. By contrast, one who falsely imprisons another, secretly or not, by that criminal act creates the risk of injury. Johnson did not construe the residual clause at all, just whether battery defined as touching "no matter how slight . . . even a tap on the shoulder" had as an element "physical force."

Moreover, Schneider's argument cannot withstand the Court's discussion of flight from a police officer in Sykes. The statute of conviction in Sykes did not require that the flight be accomplished in a reckless manner, but the Court thought the danger from the chase, even by the police rather than the perpetrator, sufficed to make the crime a "violent felony" under the residual clause. The Court noted,

ACCA).

[48] Johnson v. United States, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010) (holding that Florida battery is not a "violent felony" under the ACCA).

"Even if the criminal attempting to elude capture drives without going full speed or going the wrong way, he creates the possibility that police will, in a legitimate and lawful manner, exceed or almost match his speed or use force to bring him within their custody."

In Sykes, the police officer's pursuit may have been the immediate proximate cause of injury to another, but the unlawful flight was the legally responsible cause for purposes of the Armed Career Criminal Act. Likewise a victim's jumping out of the car in a dangerous way or in a dangerous place may be the immediate proximate cause of injury, but the secret abduction is the legally responsible cause. Criminal law has often treated a crime as the cause of injury to another, even though the immediate proximate cause is a subsequent act by the victim to preserve his or her own life or safety.[49]

Just as vehicular flight from law enforcement, even non-reckless flight, "invites, even demands, pursuit" by police officers,[50] Florida false imprisonment, even when accomplished secretly, creates a likelihood of attempted escape or resistance by the victim. We therefore conclude that Florida false imprisonment,

---

[49] H.L.A. Hart & Tony Honoré, Causation in the Law 330-31 (2d ed. 1985). A related example is felony murder when the immediate proximate cause of death is a policeman's bullet fired in defense. See R. v. Pagett, (1983) 76 Crim. App. 279 (upholding conviction where police returned fire and killed pregnant girl being used as human shield by appellant).

[50] Sykes, 131 S. Ct. at 2274.

even when accomplished secretly, produces "a serious potential risk of physical injury to another" for purposes of the residual clause of the Armed Career Criminal Act. False imprisonment accomplished secretly, in the ordinary run of cases, poses a serious potential risk of injury to another, and is the responsible cause even if an attempt to escape may likely be the immediate cause.

Florida false imprisonment is not a strict liability, negligence, or recklessness crime. It requires an intent to "confin[e], abduct[], imprison[], or restrain[] another person without lawful authority and against her or his will."[51] The Begay inquiry into whether the crime is "purposeful, violent, and aggressive" therefore does not, under Sykes and Chitwood, apply.

**AFFIRMED.**

---

[51] Fla. Stat. § 787.02(1)(a); see also State v. Sanborn, 533 So. 2d 1169, 1170 (Fla. 1988).

23