[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13557

_____

D.C. Docket Nos. 0:11-cv-60420-WPD,
0:01-cr-06090-WPD-1


HERBERT ROZIER,

                                        Petitioner - Appellant,

versus


UNITED STATES OF AMERICA,

                                        Respondent - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 21, 2012)

Before CARNES, BARKETT, and HILL, Circuit Judges.

CARNES, Circuit Judge:

    In 2001, Herbert Rozier was convicted of distributing crack cocaine in

violation of 21 U.S.C. § 841(a).  In calculating his pre-United States v. Booker,

543 U.S. 220, 125 S.Ct. 738 (2005), sentencing guidelines range, the district court

applied the United States Sentencing Guidelines § 4B1.1 (Nov. 2000) career

offender enhancement because Rozier had "two prior felony convictions of . . . a

crime of violence."[1]  One of the two prior felony convictions that the court found

was a "crime of violence" and that made Rozier a career offender was a Florida

felony conviction for battery on a law enforcement officer in violation of Fla. Stat.

§ 784.07(2)(b).[2]  The career offender enhancement led to a guidelines range of 151

to 188 months imprisonment.  Rozier objected to the enhancement, but the district

court overruled that objection and sentenced him to 151 months in prison.  Rozier

appealed his sentence, contending that his prior conviction for felony battery on a

law enforcement officer was not a conviction for a crime of violence under

---

[1] As we explained in United States v. Chitwood, 676 F.3d 971, 975 (11th Cir. 2012), "[u]nder § 4B1.2 of the guidelines, any state or federal offense that is punishable by more than one year of imprisonment can be a crime of violence if it fits within one of three categories." The first category of crimes, sometimes referred to as "elements clause" crimes, has "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).  The second category includes the enumerated crimes of "burglary of a dwelling, arson, or extortion" and those involving the "use of explosives." Id. § 4B1.2(a)(2). The third category, sometimes referred to as "residual clause" crimes, includes those crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." Id.

[2] A person commits battery on a law enforcement officer if he "[a]ctually and intentionally touches or strikes [a law enforcement officer] against the will of the [officer]; or [i]ntentionally causes bodily harm to [the officer]" while the officer is engaged in the lawful performance of his or her duties.  Fla. Stat. §§ 784.03(1)(a), 784.07(2).

2

U.S.S.G. § 4B1.2(a).

In 2002, we affirmed Rozier's sentence.  United States v. Rozier, 37 F. App'x 499 (11th Cir. 2002) (table) (unpublished) (Rozier I).  In rejecting his argument that his Florida felony conviction for battery on a law enforcement officer did not qualify as a crime of violence, we explained:  "Although the battery of a law enforcement officer may be committed without actual violence, in committing the unlawful touching the offender creates the potential for violence to the officer, a violent response on the officer's part, and a risk of harm to bystanders."  Id.  In the nomenclature used in this type of case, our holding was that although Rozier's Florida battery on a law enforcement officer conviction did not qualify as a crime of violence under the elements clause of § 4B1.2(a)(1), it did qualify as a crime of violence under the residual clause of § 4B1.2(a)(2).  See e.g., Sykes v. United States, — U.S. —, 131 S.Ct. 2267, 2273–76 (2011); James v. United States, 550 U.S. 192, 196–209, 127 S.Ct. 1586, 1591–98 (2007); United States v. Chitwood, 676 F.3d 971, 975–81 (11th Cir. 2012).[3]  Two of our sister circuits later reached the same conclusion about similar offenses involving battery

---

[3]  In Sykes and James, the Supreme Court interpreted the definition of "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e).  "In determining whether a conviction is a crime of violence under U.S.S.G. § 4B1.2, we also rely on cases interpreting the residual clause of the [ACCA] because the § 4B1.2 definition of 'crime of violence' and ACCA's definition of 'violent felony' are substantially the same."  Chitwood, 676 F.3d at 975 n.2 (citation omitted); see also United States v. Archer, 531 F.3d 1347, 1350 n.1 (11th Cir. 2008).

3

on a law enforcement officer, holding that those offenses qualify as § 4B1.2(a)(2) crimes of violence or ACCA violent felonies under the residual clause. See United States v. Williams, 559 F.3d 1143, 1149 (10th Cir. 2009) (holding that an Oklahoma conviction for battery on a police officer under a statute that criminalized the slightest touching qualified as a crime of violence under residual clause of the career offender guideline because, among other things, "[s]uch battery involves an overt act against the police officer—thereby not only initiating a confrontation, but risking a serious escalation in violence"); United States v. Dancy, 640 F.3d 455, 469–70 (1st Cir. 2011) (concluding that a Massachusetts conviction for assault and battery on an officer qualifies as a violent felony under the residual clause of the ACCA, because it "nearly always poses a serious risk of actual or potential physical force and the likelihood of physical injury" and because the serious risk of injury is heightened by the fact that "law enforcement officers usually carry weapons when on duty") (quotation marks omitted).

In 2011, Rozier filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence, claiming that the sentencing court had erred in finding that his prior Florida felony conviction for battery on a law enforcement officer was a crime of violence for purposes of the U.S.S.G. § 4B1.1 career offender enhancement and that this Court had erred in rejecting that contention when we

4

affirmed his sentence.  He relied on the Supreme Court's decision in Johnson v.

United States, — U.S. —, 130 S.Ct. 1265 (2010), which the Court issued nearly

eight years after our decision in his direct appeal.  In Johnson, the Court held that

Florida's felony battery offense is not a "violent felony" under the ACCA's

elements clause, 18 U.S.C. § 924(e)(2)(B)(i).[4]  130 S.Ct. at 1274.  The Court,

however, explicitly refused to decide whether that offense was a crime of violence

under the ACCA's residual clause.  Id.

The district court rejected Rozier's claim and dismissed his § 2255 motion.

It reasoned that even if it had been error to apply the career offender enhancement

in the case, "[a]n error that would justify a reversal on a direct appeal will not

necessarily support a collateral attack on a final judgment" because "the question

is whether the asserted error invokes an omission inconsistent with the

rudimentary demands of fair procedure or a fundamental defect which inherently

results in a complete miscarriage of justice."  The court, however, granted a

certificate of appealability on the following issue:  "[W]hether Johnson v. United

States, 130 S.Ct. 1265 (2010), should be given retroactive application so that

---

[4] In United States v. Williams, 609 F.3d 1168, 1169–70 (11th Cir. 2010), we held that, based on the Court's decision in Johnson, "the fact of a conviction for felony battery on a law enforcement officer in Florida, standing alone, no longer satisfies the 'crime of violence' enhancement criteria as defined under the [elements clause] of section 4B1.2(a)(1) of the sentencing guidelines."

5

Rozier's career offender classification should be eliminated and he should be re-sentenced."  Contrary to our dissenting colleague's selective reading, Dissenting Op. at 2, the COA does cover the questions we address in this opinion by asking us to consider (1) whether the Johnson decision is retroactively applicable and (2) if it is, whether Rozier's career offender classification should be eliminated in light of that decision.  See, e.g., McCoy v. United States, 266 F.3d 1245, 1248 n.2 (11th Cir. 2001) ("Although our review is limited to the issues specified in the COA, we will construe the issue specification in light of the pleadings and other parts of the record.") (quotation marks omitted).

The government concedes, and we take it as a given, that the Supreme Court's Johnson decision is retroactively applicable.  That does not, however, mean that Johnson entitles Rozier to § 2255 relief from the application of the career offender enhancement in his case, from the resulting sentence, and from our decision affirming that sentence and rejecting his claim on direct appeal.  At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding.  See United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."

6

(alteration, citation, and quotation marks omitted)); see also Davis v. United States, 417 U.S. 333, 342, 94 S.Ct. 2298, 2303 (1974) ("[E]ven though the legal issue raised in a § 2255 motion was determined against the applicant on the merits on [direct appeal], the applicant may nevertheless be entitled to [collateral review on the legal issue] upon showing an intervening change in the law." (emphasis added) (alteration and quotation marks omitted)); Fuller v. United States, 398 F.3d 644, 648–49 (7th Cir. 2005) (holding that a movant could not relitigate his ineffective assistance of counsel claim in a § 2255 motion because the decision he relied on as an intervening change in law had "no relevance" to his case and gave the court "no reason to disturb the law of the case"); United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004) ("Because the Defendants have not pointed to any change in the law that warrants our reconsideration of these claims, we agree with the district court that they cannot relitigate these issues."); White v. United States, 371 F.3d 900, 902 (7th Cir. 2004) ("Invoking the doctrine of the law of the case, the courts, including our court, forbid a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal."); United States v. Sanin, 252 F.3d 79, 85 (2d Cir. 2001) ("Therefore, because [the movant's] arguments were considered previously, and because there has been no intervening change in the law entitling [him] to revisit issues already fully litigated, we find

7

that [he] is procedurally barred from raising the issues presented in his current §

2255 petition."); Oliver v. United States, 90 F.3d 177, 179–80 (6th Cir. 1996)

(holding that a movant "could not . . . use a § 2255 petition to relitigate" a

sentencing guidelines issue that was "fully and fairly presented on direct appeal"

because there had not been "an intervening change in the law"); United States v.

Prichard, 875 F.2d 789, 790–91 (10th Cir. 1989) ("We believe the other two issues

raised in the motion to vacate were fairly encompassed in [the movant's] direct

appeal.  Absent an intervening change in the law of a circuit, issues disposed of on

direct appeal generally will not be considered on a collateral attack by a motion

pursuant to § 2255.  There is no new law applicable to [the movant's] criminal

conduct that would inure to his benefit." (citations omitted)).

The question, then, is whether the Supreme Court's Johnson decision is a

change in the controlling law that was applicable at the time of Rozier's

sentencing and at the time we affirmed his sentence.  The answer is no.  We do not

"rejoice," Dissenting Op. at 8, over that answer any more than our dissenting

colleague rejoices over his opportunity to disagree with our answer.  Instead, we

arrive at that answer, as we are required to do, based on the precedent of this Court

on direct appeal in this case.

What the Supreme Court did in Johnson is agree with our conclusion in

8

Rozier I that the Florida crime of battery on a law enforcement officer is not a crime of violence under the elements clause of U.S.S.G. § 4B1.2(a)(1) (or its counterpart in 18 U.S.C. § 924(e)(2)(B)(i)). Compare Johnson, 130 S.Ct. at 1268–73 (holding that the Florida felony offense of battery is not a "violent felony" under the ACCA's elements clause), with Rozier I, 37 F. App'x at 499 (table) ("[T]he battery of a law enforcement officer may be committed without actual violence . . . ."). An agreement is not a disagreement. We affirmed Rozier's sentence based on the residual clause of U.S.S.G. § 4B1.2(a)(2). See Rozier I, 37 F. App'x at 499 (table) (holding that "in committing the unlawful touching the offender creates the potential for violence to the officer, a violent response on the officer's part, and a risk of harm to bystanders."). The Supreme Court in Johnson did not reach the issue of whether the Florida crime of battery is a crime of violence under the residual clause of § 4B1.2(a)(2) (or its counterpart in 18 U.S.C. § 924(e)(2)(B)(ii)). See Johnson, 130 S.Ct. at 1274 (explicitly refusing to address or remand for the court of appeals to address whether "Johnson's 2003 battery conviction is a 'violent felony' within the meaning of the so-called 'residual clause' in § 924(e)(2)(B)(ii)"); United States v. Schneider, 681 F.3d 1273, 1282 (11th Cir. 2012) ("Johnson did not construe the residual clause at all, just whether battery defined as touching 'no matter how slight . . . even a tap on

9

the shoulder' had as an element 'physical force.'").  There having been no change

in controlling law since we affirmed Rozier's sentence, § 2255 relief may not be

granted on a basis that is inconsistent with our judgment on appeal.[5]

We also note, for the sake of completeness, that there is no miscarriage of

justice here.  Rozier's sentence would also stand under the modified categorical

approach, which remains unaffected by Johnson.  See Johnson, 130 S.Ct. at 1273

(explaining that the "modified categorical approach that we have approved permits

a court to determine which statutory phrase was the basis for the conviction by

consulting the trial record—including charging documents, plea agreements,

transcripts of plea colloquies, findings of fact and conclusions of law from a bench

trial, and jury instructions and verdict forms") (quotation marks and citation

omitted).

When sentencing Rozier, the district court adopted the findings of fact in

---

[5] To the extent that Rozier contends that the decision in Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581 (2008), requires that he be given § 2255 relief from our decision affirming his sentence, that contention is unpersuasive.  The Begay case did not involve a Florida battery conviction, an element of which is purposeful, violent, or aggressive conduct.  Instead, it involved a DUI conviction, which does not require purposeful, violent, or aggressive conduct. Begay, 553 U.S. at 145, 128 S.Ct. at 1586.  As the Supreme Court explained, DUI statutes "impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all," conduct that need not be purposeful, violent, or aggressive but can be merely negligent or reckless.  Id. at 145, 128 S.Ct. at 1586–87.  It was for that reason the Court in Begay held that DUI crimes are outside the scope of the residual clause.  Because Begay "does not apply to offenses that are not strict liability, negligence, or recklessness crimes," Chitwood, 676 F.3d at 979, that decision is not an intervening change in the law allowing the district court to override our judgment on direct appeal denying Rozier § 2255 relief.

10

the presentence investigation report, including its account of how Rozier

committed the crime of battery on a law enforcement officer, an account that was

unchallenged:

> According to the arrest report, on January 16, 1996, police
> officers responded to 480 N.W. 2 Way in Pompano Beach, reference
> a prowler.  The victim described a black male wearing a Dolphin
> jacket who had been looking into the front window of his residence.
> The defendant was observed walking in a south bound direction.  He
> was stopped and asked if he had been at the above address, to which
> he answered, "yes."  A large bulge was observed in the defendant's
> left front pocket.  During a pat down, the defendant removed
> something from his right front pocket.  He attempted to conceal the
> item and began swinging his arms and fist.  The defendant became
> violent, thrashing his arms violently, resisting the efforts of the
> officers to handcuff him.  The defendant also kicked violently striking
> the driver's door of the police vehicle and [sic] leaving a dent. The
> defendant broke free and began running in an easterly direction.  A
> police canine tracked Rozier to a tree.  The defendant struck the dog
> with his fist.  From Rozier's right hand, police retrieved a small
> brown baggie which contained six cocaine rocks.  The rocks tested
> positive.  He was released from imprisonment on October 4, 1998.

We have held that, when determining whether an offense is a violent felony (or

crime of violence) under the modified categorical approach, a district court can

rely on the facts set forth in the PSI if they are undisputed and thereby deemed

admitted.  See United States v. Bennett, 472 F.3d 825, 832–34 (11th Cir. 2006)

(holding that "the district court did not err in relying on the undisputed facts in

Bennett's PSI to determine that his prior convictions were violent felonies under

11

the ACCA"); see also United States v. Beckles, 565 F.3d 832, 843 (11th Cir. 2009) (explaining that "where an ambiguity exists and the underlying conviction may be examined," in addition to Shepard materials the district court "also may base its factual findings on undisputed statements found in the PSI, because they are factual findings to which the defendant has assented"). Based on the undisputed facts before it, the district court could have determined under the modified categorical approach that Rozier's conviction for felony battery on a law enforcement officer was a crime of violence. What the other panel of this Court held on direct appeal in this case was that Rozier's prior conviction fit within the residual clause, and the facts found by the district court at sentencing fully support that conclusion.

Our colleague's dissenting opinion is based on a fundamental misunderstanding. It contends without any support that the § 4B1.1(a) enhancement that was applied at sentencing in this case is "an enhancement that we all agree is error," Dissenting Op. at 7; that "[w]e know [the] enhancement was error," id.; that "[w]e know that the enhancement of his sentence was error," id. at 8; and that we "all know the result is error," id. at 10. We disagree with those assertions.

We have not decided, do not all agree, and certainly do not know that the

12

application of the enhancement by way of the residual clause in § 4B1.2(a)(2) was error. One and only one court has ever addressed that specific issue, and that was the panel of this Court (consisting of three other judges), which decided on direct appeal that Rozier's conviction for battery on a police officer was a crime of violence, not under the elements clause of § 4B1.2(a)(1) but under the residual clause of § 4B1.2(a)(2). There has been no contrary decision on that issue by any court. The Supreme Court in Johnson specifically and expressly declined to decide the residual clause issue. Johnson, 130 S.Ct. at 1274; see Schneider, 681 F.3d at 1282. Our dissenting colleague says we fail to "analyze whether Johnson is in conflict with Rozier I." Dissenting Op. at 6. To the contrary, we recognize that it is not and that the Supreme Court expressly declined to address the issue a panel of this Court decided in Rozier I. So what we do know is that this specific issue was decided against Rozier on direct appeal and there has been no intervening decision to the contrary. That is the basis upon which we must decide this case under the law, which we must follow.

**AFFIRMED.**[6]

---

[6] Because we dispose of this appeal on the grounds that we do, we have no occasion to decide, and we express no view on, any issue involving limitations imposed by 28 U.S.C. § 2253(c)(2).

13

HILL, Circuit Judge, dissenting:

This is a simple case. Rozier's sentence was enhanced under the career offender guideline because he had two prior violent felony convictions, one of which was for Florida BOLEO, which at the time was thought by us to qualify as a crime of violence. *See United States v. Rozier*, 37 Fed. Appx. 499 (11th Cir. 2002) ("*Rozier I*") (affirming enhancement on direct appeal). Later, in *Johnson*, the Supreme Court made clear that we were wrong and the Florida BOLEO statute is not a crime of violence because it permits conviction for a mere touching of the officer.

After *Johnson*, Rozier filed a federal habeas petition under § 2255 requesting that he be resentenced without the erroneous enhancement, which has him presently incarcerated far beyond what his sentence would have been without the enhancement.[1] Rozier's petition argued that *Johnson* was in conflict with *Rozier I* because *Johnson* made clear that the Florida BOLEO statute used to enhance his sentence is not – and never was – a crime of violence and, therefore, he is not – and never was – a career offender. Rozier specifically argued to the district court that, after *Johnson*, Florida BOLEO is not a crime of violence under

---

[1] We know this because the district court has said so. Rozier received five years of enhancement.

14

the career offender guideline's elements *or* residual clauses.

The district court agreed. It held that, after *Johnson*, the Florida BOLEO statute is not a valid predicate offense under the career offender guideline. Furthermore, it agreed with Rozier that *Johnson* represented a change in the substantive law governing his sentence such that, if the decision were applied retroactively, it would require Rozier to be resentenced without the career offender enhancement. The district court was concerned, however, about it being the first to hold that *Johnson* should be applied retroactively. It decided that it should not, and certified that question – and that question only – to us. No other question is before us.

That is why this case is simple. The government has conceded both here and elsewhere that *Johnson* must be applied retroactively.[2] The majority opinion recognizes this concession. Therefore, we should remand this case for re-sentencing.

Instead, the majority decides this case on an issue that has not been certified to us by the district court and, for that reason, has neither been briefed nor argued to us by the parties. When asked at oral argument about this issue – whether

_____

[2] The *Johnson* decision is widely regarded to be retroactive.

15

Rozier's enhancement was affirmed under the residual clause and was not, therefore, in conflict with *Johnson* – the government admitted that it had not raised this defense of Rozier's enhancement.[3]

Having undertaken to decide this case upon an issue not certified to us, the majority then holds that there is no conflict between *Johnson* and *Rozier I* without one word of analysis. It baldly states that there is no conflict because *Johnson* evaluated the BOLEO statute under the *elements* clause of the career offender guideline, while *Rozier I* was decided under the *residual* clause. This is surprising.

It was clear to the district court,[4] and the government,[5] and it is clear to me

---

[3] The government has waived this issue before the district court and before this panel. The Certificate of Appealability makes that clear. I feel certain that, if the petitioner had failed to make an argument to us, we would not now be making it for him.

[4] The district court said that Rozier "may well receive a time-served sentence if the change in law set forth in [*Johnson*] was applied retroactively to his benefit." (citation omitted). The certified question posited that if *Johnson* were retroactive to Rozier's case, "he should be re-sentenced."

[5] The government has opined more than once in this case and elsewhere that the Florida BOLEO statute does not qualify as a crime of violence under the career offender guideline. For example, in its response to Rozier's request for bail pending appeal, the government stated, "On June 22, 2010, in *United States v. Williams*, the Eleventh Circuit citing *Johnson*, held that a conviction for Battery on Law Enforcement Officer standing alone could not serve as a prior violent felony under the career offender guideline." (citations omitted). *See* DE 27. In *United States v. Hayes*, 409 Fed. Appx. 277 (11ᵗʰ Cir. Dec. 16 2010) the government announced that it has "re-evaluated its position" that Florida BOLEO is a crime of violence and "now concedes that the conviction for battery on a law enforcement officer does not constitute a violent felony

16

that *Johnson* is in conflict with *Rozier I*. *Johnson* holds that the Florida BOLEO statute is *not* a crime of violence under the Guidelines because one of its elements permits conviction for a mere non-violent touching. The majority's implicit assumption that the *same* statute with the *same fundamental defect* may nonetheless be resuscitated under the residual clause as a valid enhancement statute is mistaken. If the BOLEO statute is not a crime of violence because one of its elements permits conviction without any physical force – for a mere touching – it follows that it cannot be a crime of violence under the residual clause because it still permits conviction without any physical force and, therefore, without a "serious potential risk of physical injury to another." *Rozier I* does not survive *Johnson*.[6]

It would appear that the district court, the government and I are not the only ones who subscribe to this view. In this court's opinion on direct appeal in *Johnson*, the panel wrote, "If [Florida BOLEO] fits within that description [the

---

for purposes of the ACCA." In yet another case, the government dropped its appeal of the district court's grant of § 2255 relief to a defendant also enhanced under the Florida BOLEO statute. *Haugabook v. United States*, Case. No. 10-14088-Civ-Graham. Rozier has been serving his enhancement – deprived of his liberty – for the two years since the government conceded its unlawfulness. He has three years of enhancement yet to serve.

[6] It appears to me that we have already so held. *See Hayes*, 409 Fed. Appx. at 1 (in *Johnson*, the Supreme Court "held that the Florida crime of battery on a law enforcement officer is not a qualifying crime under the ACCA").

17

elements clause], it is a violent crime for ACCA purposes; *if not, then not.*" 518 F.3d at 1320 (emphasis added). In reversing that panel's subsequent conclusion that Florida BOLEO *does* satisfy the elements clause, the Supreme Court refused to remand for reconsideration of the statute under the residual clause, specifically citing the panel's aforementioned conclusion that the statute could not qualify under that clause. *See Johnson*, 130 S. Ct. at 1274.

But now, the majority assumes that there is no conflict between *Johnson* and *Rozier I* because they deal with different clauses of the career offender guideline. I disagree.

After the Supreme Court's decisions in *Begay* and *Chambers*, we acknowledged the conflict between the Supreme Court's narrowing of the residual clause in those cases with our prior expansive holdings of the reach of that clause. When the opportunity arose, we reversed several of our prior holdings that statutes other than DUI (*Begay*) and escape (*Chambers)* are crimes of violence.[7] We did

---

[7] For example, in *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008), we "extrapolated" from the *Begay* DUI decision that carrying a concealed weapon could no longer qualify as a violent felony in this circuit. We wrote in *Gilbert v. United States*, 640 F.3d 1293, 1301-02 (11th Cir. 2011) (en banc) that "*Begay* had effectively overruled our holding in *Gilbert I.*" Similarly, in *United States v. Harrison*, 558 F.3d 1280, 1287 (11th Cir. 2009), we recognized *Begay* required us to reexamine Florida's "fleeing and eluding" statute, held to be a violent felony in *United States v. Orisnord*, 483 F.3d 1169 (11th Cir. 2007). Finally, in *United States v. Lee*, 586 F.3d 859 (11th Cir. 2011), we relied upon *Begay* and *Chambers* in overruling our prior decision in *United States v. Taylor*, 489 F.3d 1112 (11th Cir. 2007) that escape is always a violent felony (the *Taylor* decision had been vacated by the Supreme Court after it ruled in *Chambers*).

18

not duck the issue of whether our prior holdings affirming enhancements under other statutes were in conflict with *Begay* and *Chambers* because those cases dealt with different statutes.  Nor did we opine that the teaching of those cases was irrelevant to the different statutes under review, as does the majority in this case.  On the contrary, we recognized that we were bound by those cases in reconsidering the scope of the residual clause.  Similarly, if we were to analyze whether *Johnson* is in conflict with *Rozier I*, as the majority fails to do, I would think that we would find *Begay* and *Chambers* relevant to the issue of whether the Florida BOLEO statute is a crime of violence under the residual clause.[8]

I reluctantly conclude that our court is determined to deny relief to every confined  habeas petitioner whose sentence has been unlawfully enhanced under either the career offender guideline or the armed career criminal statute.  We have repeatedly held that procedural rules deprive us of the ability to correct an enhancement that we all agree is error because it was not authorized by law when imposed.  To the petitioner, who is serving five, ten or even fifteen years more

---

[8] We have held that under *Begay*, as limited by *United States v. Sykes*, 131 S. Ct. 2267 (2011),  offenses fall within the residual clause if, in the ordinary case, "they categorically pose a serious risk of physical injury that is *similar to the risk posed by one of the enumerated crimes*. " *United States v. Chitwood*, 676 F.3d 971, 979 (11th Cir. 2012) (emphasis added).  Battery by a mere touching does not, in the ordinary case, result in a degree of risk similar to any of the enumerated crimes in the career offender guideline (burglary of a dwelling, arson, extortion, or the use of explosives).

19

than he would be in the absence of the error, we say, "Sorry.  We know your enhancement was error, but there is nothing we can do.  Our hands are tied by procedural rules.  We cannot fix this."

We do this in the name of "finality."  We say we are protecting the integrity of the Great Writ; we cannot go about correcting old mistakes or no conviction or sentence will ever be final.

Of course, finality is desirable.  There was a time when there appeared to be no finality in our habeas procedures.  The rules we adopted to introduce some finality into the habeas process were long overdue.

But finality must not be our highest goal.  The Great Writ is enshrined in our Constitution because we believe that no one may be deprived of life, liberty, or property by the government in violation of law.  If a petitioner can show that he is illegally incarcerated, he is entitled to release. Fairness requires it.  Justice is the ultimate goal in the grant of the Writ.

But we have increasingly come to define what is "just" by what our procedural rules permit.  Recently, the State of Alabama, a panel of this court, and two justices of the Supreme Court agreed that an Alabama prisoner could be put to death as the result of his lawyers – who abandoned his case – having missed a

20

filing deadline. Our court held that we would not – could not – consider the merits of his claim due to this procedural default.

I agree with the member of this panel who dissented in the Alabama case, writing that in certain cases procedure must "yield to the imperative of correcting a fundamentally unjust [sentence]." Seven members of the Supreme Court agreed with that view, reversing our court. *See Maples v. Thomas*, 132 S. Ct. 912 (2012).

In *Maples*, there was no certainty that there had been error in the conviction or sentence. In Rozier's case, however, there is certainty. We know that the enhancement of his sentence was error.

I must confess I am bewildered that both the United States, through its Department of Justice, and this court appear to rejoice when access to constitutional protection for the correction of admitted and highly prejudicial error is found to be blocked by unmet procedural "safeguards." On the contrary, I should have thought that the *correction* of such error would be celebrated by all sworn to uphold the Constitution. As is inscribed in the office rotunda of the Attorney General of the United States, "The United States wins its point whenever justice is done its citizens in the courts."[9] Some in the Department of Justice seem

---

[9] This saying is ascribed to Attorney General Frederick William Lehman who, in representing the United States government in the Supreme Court, would, when he believed it

21

to believe that the inscription reads, "Justice is done when the United States wins."

Clearly justice is not the intended beneficiary of these procedural safeguards. On the contrary, the safeguards are designed to protect finality. If these new rules require that finality trump justice, then perhaps, as one member of this panel has opined elsewhere, they are unconstitutional. In any event, I cannot join in this elevation of form over substance; of finality over fairness.

Due process is the defining virtue of our system of criminal justice. But we should ask ourselves why. Is it because it achieves finality? Or is it because we believe that, more often than not, we will reach a correct result where certain process is due the criminal defendant. The goal is a correct result – not simply the provision of process. To be sure, we do not guarantee a correct result. But where *all know the result is error*, to adhere to the process as though it were the end goal is unfair in the purest sense of the word.

This is especially true where the petitioner is in federal custody, not state custody. We safeguard finality for state court convictions out of respect for the dual principles of comity and federalism. Neither of these considerations is due the erroneously sentenced federal prisoner.

---

called for, confess judgment and admit that the government had been wrong all along even when supported by a lower court's prior decision.

22

It seems to me that the majority has striven mightily to avoid granting the writ to someone currently deprived of liberty in violation of law. I am weary of our court's relentless effort to put more and more procedural angels on the head of the habeas pin. At some point, we must concede, as the Seventh Circuit did recently, that common sense and basic fairness require that we correct these unlawfully enhanced sentences. *See Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011).

I respectfully dissent.